UNITED STATES v. HICKEY.

1. When the Court of Claims, on a claim embracing several items, rejects some but allows others, against which allowance the United States *alone* appeals, this court will not give consideration to the items rejected and against whose rejection the claimant has not appealed, except so far as may be necessary for a proper understanding of the item allowed.

2. Where a lessee, after letting to another, reserving a rent, has assigned all his "right, title, and interest" in the lease, and "authorized the assignee to sue for, collect, and recover the lease, and the rights to the rent reserved under the same," declaring "it to be distinctly under-

---

* Moore v. Raymond, 15 Texas, 554; Watt v. White, 33 Id. 425.
† McAlpine v. Burnett, 19 Texas, 497.

stood" that it is the object and purpose to put the assignee in his "place and stead, so far as concerns his rights under the lease"—the lessee, on a claim against him by the sub-tenant, cannot set up a claim for arrears of rent due to him at the time when he assigned the lease. The transfer has carried them to the assignee.

APPEAL from the Court of Claims; the case being thus:

In July, 1851, the Secretary of the Treasury, on behalf of the United States, agreed with one Eldredge, to lease from him certain warehouses in the city of San Francisco for the term of ten years. The rent for the first two years was fixed at $6000 per month, and it was agreed that at the expiration of every two years thereafter the secretary should have the privilege of having the rent fixed for the ensuing two years by a commission, of which the secretary should appoint one member, Eldredge another, and that the two thus selected should choose a third.

In February, 1856, the United States desiring to "get clear of this lease," the collector of the port of San Francisco, by authority of the Secretary of the Treasury, entered into an agreement with one Hickey, by which the United States leased to him the warehouses mentioned, *during the term* of the lease first mentioned. Hickey agreed to pay $500 per month until the 1st of May following (that is to say, till the 1st of May, 1856, at which time an appraisement was to be made as by the terms of the original lease), and to pay thereafter to the United States the sum which should be awarded to Eldredge for the two years ensuing, and after that time to pay such sum as should be awarded from time to time for the terms of two years thereafter ensuing:

"Provided, nevertheless, that the sum of $250 per calendar month is hereby saved and reserved to the said Hickey during the term of the aforesaid lease, as a bonus to him, . . . to be paid at the expiration of each month, . . . monthly until the completion of the same."

Under this agreement Hickey paid rent as agreed until May, 1856. He then appointed one person to appraise the

future rent. The secretary appointed another. They failed to agree, and failed to appoint an umpire; and the Secretary of the Treasury, although receiving notice of such failure, took no further steps in the matter.

On the 13th of April, 1857, difficulties and disputes having arisen between the government and Eldredge concerning the amount of rents lawfully demandable by Eldredge from the government, the secretary, without the knowledge of Hickey, entered into an agreement with Eldredge by which the United States transferred and assigned to him " all their right and title and interest in and' to the said lease, and authorized him to sue for, collect, and recover the Hickey lease, and the rights to the rent reserved under the same," and agreed to pay him $110,000 in satisfaction of all future claims for rent under the original lease; this conveyance adding to its terms of assignment and transfer these words:

" It being distinctly understood that it is the object and purpose of this agreement to put the said Eldredge in the place and stead of the United States, so far as concerns the rights of the United States under the lease aforesaid."

In August of the same year Eldredge took proceedings in the courts of California against Hickey for non-payment of rent on the lease, and in November dispossessed him of the premises.

In this state of things Hickey filed a petition in the Court of Claims, in which he alleged that the United States were indebted to him upon three items:

1. His bonus of $250 per calendar month, reserved, and extending, as he alleged, through a term of six years, $18,000.

2. For damages in the breaking up of his business by the eviction, against which he asserted his right to be indemnified by the United States, $28,000.

3. For storage of goods belonging to the United States during the years 1856 and 1857, the sum of $1370. The claim was for storage while Hickey was in possession of the warehouses as above mentioned.

Against this last claim (which was not denied) the United States set up a counter-claim of $9000 for rent alleged to be due by Hickey, from May, 1856, to November, 1857 (when Hickey was evicted), on the lease made by them to him. No evidence was given of the monthly value of the premises.

The Court of Claims rejected Hickey's first and second claims; that is to say, his claims of bonus, and for damages, but allowed his claim for storage; *dis*allowing the counter--claim or set-off presented by the United States.

The United States *alone* appealed.

*Mr. S. F. Phillips, Solicitor-General, for the appellants; Mr. J. W. Moore, contra.*

Much of the argument was directed to the matter of the two items which were rejected by the Court of Claims; items not passed on by this court. On the remaining point, the refusal of the court below to allow the counter-claim of the United States, the Solicitor-General argued that the lease to Hickey was not a sub-lease, but a lease of the term (*i. e.*, of the entire term), from February 1st, 1856, to the end of the lease. This was a transfer of the whole interest of the United States in the lease, and of necessity therefore an *assignment* of the lease.

As a consequence of this, Hickey became bound to El-dredge for all rent that the United States, the lessee and assignor, had agreed to pay. Now the United States had agreed to pay $6000 a month, unless arbitrators appointed from time to time should say otherwise. And upon a consideration of the whole transaction, including the relations of Hickey as assignee to Eldredge, and thereupon indirectly to the United States, it seemed clear that Hickey's obligation by his contract with the United States was, that if there was no assessment upon the 1st of May, 1856, he would in effect take the place of the United States in their contract with Eldredge as regards the payment of the rent, receiving the *bonus* of $250 a month by way of diminution of his rent. But Hickey paid rent to no one after the 1st of May, 1856.

Upon the whole, the case was one in which the assignee of

a lessee, who is indebted to the original lessor for a large amount which the lessee has in fact paid, demanded that the lessee should pay him a debt much less than that already paid for him to the original lessor, and one, at that, growing out of the same transaction. The assignee of a lease in possession is to be regarded as the principal debtor for rent to the lessor, and the lessee as only secondary.

Mr. Justice HUNT delivered the opinion of the court.

By not appealing, the claimant has declared himself to be content with the disposition of the case by the Court of Claims. The appeal brings up only the claim allowed. The rejected items, therefore, will receive no consideration, except so far as may be necessary for a proper understanding of the item allowed.

It is said that the transaction with Hickey was an assignment to him by the United States, and not an underletting. It was not an assignment, as the terms between the United States and Hickey were different from those between Eldredge and the United States. The United States agreed to pay $6000 per month, and had a privilege of an appraisement at their option. Hickey agreed to pay $500 per month only for the first two months, was to have in substance a deduction of $250 for every month thereafter by the United States, and no rent after May 1st was fixed unless an appraisal should be made.* It is difficult, however, to see the importance of the difference in this proceeding, whether it was an assignment or subletting. The short answer to the counter-claim is that the United States had assigned to Eldredge all their claim and demand for the rent upon this lease, and therefore could have no claim against Hickey by virtue of it. The rent was paid by Hickey to May 1st, 1856. After that time he refused to pay rent, on the ground that there was no appraisal fixing the amount. No appraisal has ever been made. No evidence was given before the Court of Claims of the rental value of the premises, and I see not

---

* 2 Blackstone's Commentaries, 327, n.

how more than nominal value could in any event be claimed. But beyond this, the United States, on the 13th of April, 1857, transferred and assigned to Eldredge all their right, title, and interest in and to the lease, and authorized him to sue for and recover the rents reserved to the United States as fully as they could do. It was added, "it being distinctly understood that it is the object and purpose of this agreement to put the said Eldredge in the place and stead of the United States, so far as concerns the rights of the United States under the lease aforesaid." It was by virtue of the ownership of the lease acquired under this assignment that Eldredge took proceedings in the California courts, which resulted in the eviction and dispossession of Hickey from the premises described in the lease. This assignment, in the terms stated, carried all the interest in the rents already accrued as well as rents thereafter to accrue. It was broad and comprehensive, carrying every interest in or connected with or arising out of the lease. There was no claim or demand against Hickey existing in the United States under this lease, and consequently there was no counter-claim to be interposed against his demand for storage allowed by the judgment appealed from. The decision of the Court of Claims was right and must be

AFFIRMED.