ALEXANDER, COLLECTOR OF INTERNAL REVE-
NUE, *v.* COSDEN PIPE LINE CO.

No. 54.   Argued November 10, 13, 1933.—Decided January 8, 1934.

*Solicitor General Biggs,* with whom *Messrs. J. Louis Monarch* and *F. Edward Mitchell* were on the brief, for petitioner.

*Mr. Richard H. Wills,* with whom *Mr. James C. Denton* was on the brief, for respondent.

MR. JUSTICE VAN DEVANTER delivered the opinion of the Court.

This was an action at law brought in the District Court for the Western District of Oklahoma to recover from the defendant moneys alleged to have been wrongfully exacted by him, as collector of internal revenue, from the plaintiff as excise taxes on the transportation of crude oil through the latter's pipe line.

Apart from matters eliminated during the pendency of the suit, four distinct claims were asserted. The first related to the transportation of 2,022,248.41 barrels for Cosden and Company between November 1, 1917, and March 31, 1919, whereon an additional assessment of $15,066.87 was made and collected. The second related to the transportation of 20,644,020.34 barrels for the same company between April 1, 1919, and March 31, 1921, whereon an additional assessment of $170,946.04 was made and collected—of which sum a refund of $5,793.76 was made pending the suit, thereby reducing the claim to $165,152.28. The third related to the transportation of 3,666,048.39 barrels for the same company between July 1, 1918, and March 31, 1919, whereon an assessment of $36,666.50 was made and collected. The fourth related to the transportation of 99,590.31 barrels for the Pierce Oil Corporation between November 1, 1917, and March 31, 1919, whereon an assessment of $995.90 was made and collected.

The issues were tried under a written stipulation waiving a jury, and the court made special findings of fact and declarations of law whereon it rendered a judgment awarding the plaintiff the full amount of each of the first two claims, $18,333.25 on the third, and $746.92 on the fourth—with interest on each of these sums.

The defendant appealed to the Circuit Court of Appeals, which sustained the awards on the first and second claims, wholly rejected the third, reduced the award on the fourth $375.71, and accorded the plaintiff a limited time within which to file a remittitur of the amount awarded on the third claim and of $375.71 of that awarded on the fourth. The remittitur was seasonably filed and thereupon the Court of Appeals affirmed the judgment of the trial court as modified and reduced by the remittitur. 63 F. (2d) 663.

The case is here on certiorari.

The discussion in the briefs makes it advisable to point out at the outset that we have no occasion to reëxamine the third and fourth claims. In the District Court each of these claims was allowed in part and rejected in part. The defendant alone appealed. In the Court of Appeals the third claim was rejected and the award on the fourth reduced. The defendant alone petitioned for a review here. In this situation the plaintiff is not entitled to be heard in opposition to the parts of the decision of the Court of Appeals which were adverse to it—as were the rejection of the third claim and the reduction of the award on the fourth—but only in support of the parts which were in its favor. As to the former it has acquiesced and become concluded by not seasonably petitioning for a review.[1] And the defendant is not entitled to complain of the parts of the decision which were in his favor—as were the rejection of the third claim and the reduction of the award on the fourth—but only of such as were adverse to him[2]—as was the refusal wholly to disapprove, or further to reduce, the award on the fourth claim. It is doubtful that the defendant's petition for certiorari contains any

---

[1] *United States* v. *Hickey*, 17 Wall. 9, 13; *United States* v. *Blackfeather*, 155 U.S. 180, 186; *Chittenden* v. *Brewster*, 2 Wall. 191, 196; *The William Bagaley*, 5 Wall. 377; *Canal Co.* v. *Gordon*, 6 Wall. 561, 568; *The Maria Martin*, 12 Wall. 31, 40–41; *New Orleans Mail Co.* v. *Flanders*, 12 Wall. 130, 134–135; *Mount Pleasant* v. *Beckwith*, 100 U.S. 514, 527; *Clark* v. *Killian*, 103 U.S. 766, 769; *Loudon* v. *Taxing District*, 104 U.S. 771, 774; *Hubbard* v. *Tod*, 171 U.S. 474, 494; *Bolles* v. *Outing Co.*, 175 U.S. 262, 268; *Landram* v. *Jordan*, 203 U.S. 56, 62; *Peoria & P. U. Ry. Co.* v. *United States*, 263 U.S. 528, 536; *United States* v. *American Ry. Exp. Co.*, 265 U.S. 425, 435; *Federal Trade Comm'n* v. *Pacific States Paper Trade Assn.*, 273 U.S. 52, 66; *Charles Warner Co.* v. *Independent Pier Co.*, 278 U.S. 85, 91; *Langnes* v. *Green*, 282 U.S. 531, 538.

[2] *Maryland Insurance Co.* v. *Woods*, 6 Cranch 29, 42; *Corning* v. *Troy Iron & Nail Factory*, 15 How. 451, 464–465; *Chittenden* v. *Brewster*, 2 Wall. 191, 196; *Loudon* v *Taxing District*, 104 U.S. 771, 774.

real challenge of the ruling of the Court of Appeals on the fourth claim. But, be this as it may, the Solicitor General, speaking for the defendant, in the argument at the bar disclaimed any purpose to ask this Court to reëxamine or disturb that ruling. This disclaimer, made on behalf of the only party who then had any semblance of right to ask such a reëxamination, eliminated any need for considering the fourth claim just as a like disclaimer in the petition for certiorari would have done. For these reasons it should be understood that the merits of the third and fourth claims are not here under consideration, but are regarded as settled by the decision of the Court of Appeals.

Another matter bearing on the scope of the present examination needs attention. The defendant asks that the evidence be examined in connection with his motion for judgment thereon which was made and denied in the trial court, and the plaintiff answers that this cannot be done because the evidence has not been brought into the record by a proper bill of exceptions. The objections which the plaintiff makes to the bill are that it does not purport to contain all of the evidence but only such as is material to the defendant's assignment of errors, and that the evidence, both testimonial and documentary, appearing therein is set out without any attempt at condensation or narration.

Rule 10 of the Court of Appeals,[3] like Rule 8 of this Court,[4] provides:

" Only so much of the evidence shall be embraced in a bill of exceptions as may be necessary to present clearly the questions of law involved in the rulings to which exceptions are reserved, and such evidence as is embraced therein shall be set forth in condensed and narrative form, save as a proper understanding of the questions presented may require that parts of it be set forth otherwise."

[3] *Caldwell* v. *United States*, 36 F. (2d) 738, 739–740.
[4] 286 U.S. 598.

The bill, after the usual introductory recitals, contains an agreed statement of particular facts, sets out other evidence produced by the plaintiff and by the defendant, each in turn, and then says "This is all the evidence offered and taken at the trial." Other statements follow to the effect that later on, but before the finding, the court admitted an additional and specified item of evidence to which the parties agreed; that at the close of the evidence the defendant moved for judgment in his favor as to each of the claims because there was not sufficient evidence to support a finding or judgment against him; and that the court denied this motion and the defendant reserved an exception. At the end is a stipulation wherein the parties, through their counsel, agree that the bill contains " all the evidence material to the defendant's assignment of errors " and all exceptions taken in the course of the trial, and consent that " the same be settled and filed as the settled bill of exceptions "; and then follows a certificate by the trial judge authenticating and allowing the bill in the same terms that are used in the stipulation. The reference in the stipulation and certificate to " the defendant's assignment of errors " is explained by the fact that during the period given for the preparation and presentation of the bill the defendant had sought and the trial judge had allowed an appeal to the Circuit Court of Appeals; and with his application for the appeal the defendant had presented and filed an assignment of errors showing the rulings and questions which he intended to present on the appeal—one of the rulings being the denial of his motion at the close of the evidence for judgment thereon in his favor.

A survey of the bill from its beginning to its end shows, we think, that it contains all of the evidence. The statement to that effect in the body of the bill is not overcome or qualified by the statement in the concluding stipulation and certificate that it contains all that is "material to the

defendant's assignment of errors." When regard is had to the circumstances in which the later statement was made there is no room to doubt that it was intended to be, and is, as comprehensive as the first. As the defendant's assignment of errors, to which the stipulation and certificate refer, brought in question the sufficiency of the evidence to support the judgment, the conclusion is unavoidable that counsel when entering into the stipulation and the trial judge when giving the certificate understood that all the evidence was material to the solution of that question, and that they used the terms appearing in the stipulation and certificate as comprehending, not merely a part of the evidence, but all of it.[5]

It is true that the evidence is set out without any attempt at condensation or narration; but it is also true that the plaintiff expressly consented to the allowance of the bill in this form, and that the Court of Appeals not only made no criticism of the bill but examined the evidence and rejected the third claim as without necessary evidential support.

The evidence is not of large volume. Besides 5 pages of stipulated facts, it includes 20 pages of testimony given by three witnesses and 30 pages of documents. Without doubt much of it could have been condensed and narrated without in any wise affecting its purport or substance,[6] but other parts, particularly some of the documents, are of such a nature that a literal reproduction well might have been regarded as essential to a proper understanding of them.

Of course, the rule relating to condensation and narration should be respected by the bar and by trial judges,[7] and should be appropriately enforced by appellate

[5] See *Waldron* v. *Waldron*, 156 U.S. 361, 378.

[6] See *Krauss Bros. Co.* v. *Mellon*, 276 U.S. 386, 390–391.

[7] *Lincoln* v. *Claflin*, 7 Wall. 132, 136–137; *Krauss Bros. Co.* v. *Mellon, supra*.

courts;[3] but we are of opinion that in the circumstances here shown the plaintiff is not in a position where it with good grace can complain of the form in which the evidence is set out, and that the infraction of the rule in this instance is not of such extent or moment as to justify us in now declining to regard the evidence as brought into the record by the bill.

We come then to a consideration of the first and second claims. The errors assigned as to them involve the sufficiency of the evidence to support any judgment against the defendant and the sufficiency of the special findings to support the particular judgment rendered thereon. Most of the pertinent findings have such support in the evidence that they must be accepted here, but some are without such support. We shall summarize the facts found so far as they are pertinent and shall refer to the evidence where there is need for it. In this way the evidence and findings will both be reflected sufficiently for present purposes.

The plaintiff, an Oklahoma corporation, owns pipe lines leading into Tulsa, Oklahoma, from oil fields in that State and operates its lines in the transportation, intrastate, of crude oil. All of its stock is owned by Cosden and Company, another Oklahoma corporation, which operates an oil refinery at Tulsa. While not stated in the findings, the evidence shows that the two corporations are under substantially the same management, have the same offices, and in part have the same employes.

The plaintiff is engaged chiefly in carrying oil for Cosden and Company, but it also carries large quantities for others. It does not hold itself out as a common

---

[3] See *Newton* v. *Consolidated Gas Co.*, 258 U.S. 165, 173–174; *Houston* v. *Southwestern Bell Tel. Co.*, 259 U.S. 318, 325; *Barber Asphalt Co.* v. *Standard Asphalt Co.*, 275 U.S. 372, 387; *Fairbanks, Morse & Co.* v. *American Valve & Meter Co.*, 276 U.S. 305, 308, *et seq.*

carrier, is not required by the State to file or publish rates or tariffs, and does not file or promulgate either. Common carrier pipe lines operating in the vicinity of the plaintiff's lines have both trunk lines and gathering lines—and also tariff stations at which oil is received into the trunk lines. The plaintiff has no tariff stations and receives oil at any place along its lines where it can obtain the oil. Its lines are gathering lines only and comparable only to the gathering lines of the common carriers; and the service which it renders, as compared with that rendered by the common carriers, is a gathering service only. While not appearing in the findings, the stipulated facts included the following:

"Any pipe line reaching from any point where oil is purchased or produced to the trunk or main line or to storage tanks at or near the main or trunk line or to tank farms is called a gathering line, without regard to its size, the distance, or the amount of oil carried through such line to the trunk or main pipe line, or to the trunk or main pipe line storage tanks, or to a tank farm.

" The gathering charge is a sum paid for the service rendered in moving oil from the point where it is tendered to or received by the carrier, whether it be the working tank at the well or the storage tanks in the field, to the trunk or main line tariff stations, or to a tank farm of the carrier or to main-line storage tanks. And the rate charged for such gathering service is a flat rate, being the same by the same carrier in the same field, whether the distance traversed by the gathering line be twenty-five yards or twenty-five miles."

All of the matters recited thus far were true during the period of the transportation in question.

The oil named in the first and second claims was owned by Cosden and Company and was transported for it by the plaintiff in the latter's pipe line—that in the first claim between November 1, 1917, and March 31,

1919, and that in the second between April 1, 1919, and March 31, 1921.

The plaintiff charged and Cosden and Company paid 5 cents per barrel for the transportation in the first claim and 10 cents per barrel for that in the second; and the plaintiff collected from Cosden and Company and paid over to the revenue collector an excise tax on such transportation computed at the statutory rate on the amounts so charged and paid.

The Commissioner of Internal Revenue found and ruled that 20 cents per barrel was the proper charge on which to base and compute the excise tax, and he accordingly made the additional assessments involved in the two claims. The plaintiff paid these assessments to the defendant collector, applied unsuccessfully for a refund and then brought this suit.

While there is no finding on the point, the evidence shows that the commissioner in holding 20 cents the proper charge on which to base and compute the tax proceeded on the theory that the transportation included both a gathering and a trunk line service, and determined that 12½ cents was the proper charge for the former and 7½ cents for the latter.

The usual and customary charge of common carrier pipe lines in that vicinity for gathering service was from 12 to 12½ cents per barrel from November 1, 1917, to December 31, 1921.

The plaintiff's charge to Cosden and Company during that period varied. From a date several months earlier than November 1, 1917, to July 1, 1918, the charge was 5 cents per barrel; from July 1, 1918, to March 31, 1919, no charge was made, although large quantities of oil were then being carried by the plaintiff for that company; and thereafter the charge was 10 cents. Its charges to others also varied. From November 1, 1917, to December 31,

1921, they ranged through 7, 10, 12, 15 and 17½ cents per barrel; and their average was 13 cents for the first five months of that period and 16.4 cents for the rest of the time—the average being arrived at in each instance by dividing the total receipts from that transportation by the total number of barrels included therein.

The plaintiff's "actual costs and expenses of carrying oil" were 7.8 cents per barrel in 1918, 7.6 cents in 1919, 10.7 cents in 1920, and 8.8 cents in 1921. This finding is supported by uncontradicted evidence based on a definite computation made after the oil was carried and the costs and expenses were incurred. Two other findings are to the effect that the charges for carrying oil for Cosden and Company were "sufficient to take care of the actual costs and expenses" of that service. But these findings must be put aside. They rest entirely on a statement by one of the witnesses that the charges were fixed periodically by estimating in advance "what the expenses of operating the pipe line would be" and "how much oil would be pumped into the pipe line," and are inconsistent with uncontradicted evidence showing the amount of oil carried and the actual costs and expenses as definitely computed after the transportation was completed.

The trial court concluded as matter of law that where the plaintiff made and collected a charge for carrying oil that charge became, under the applicable statutes, the sole and exclusive basis for the collection of the transportation tax. It therefore held the additional assessments in the first and second claims wholly invalid and gave the plaintiff an award for all that had been exacted from it under those assessments. The Court of Appeals sustained that ruling.

The applicable statutes are §§ 500, 501 and 503, of the Revenue Act of 1917 [9] which was controlling at the time

[9] C. 63, 40 Stat. 300, 314.

of the transportation in the first claim, and §§ 500–502 of the Revenue Act of 1918 [10] which was controlling at the time of the transportation in the second claim.

The Act of 1917, in § 500 (d) imposed on the " transportation of oil by pipe line " a tax " equivalent to five per centum of the amount paid " therefor; in the first paragraph of § 501, declared the tax should be paid by the person " paying for " the transportation; and in § 503 laid on the carrier a duty to collect the tax from the person paying for the transportation, to make informative monthly returns under oath, and to pay to the collector of internal revenue all taxes so collected by it and " the taxes imposed upon it " under the second paragraph of § 501, which declared:

" In case such carrier does not, because of its ownership of the commodity transported, or for any other reason, receive the amount which as a carrier it would otherwise charge, such carrier shall pay a tax equivalent to the tax which would be imposed upon the transportation of such commodity if the carrier received payment for such transportation: *Provided,* That in case of a carrier which on May first, nineteen hundred and seventeen, had no rates or tariffs on file with the proper Federal or State authority, the tax shall be computed on the basis of the rates or tariffs of other carriers for like services as ascertained and determined by the Commissioner of Internal Revenue."

The Act of 1918, in its §§ 500 (e), 501 (a) and 502, reënacted these provisions, save that it increased the tax to eight per centum and substituted for the second paragraph of § 501 the following:

" Sec. 501 (d). The tax imposed by subdivision (e) of section 500 shall apply to all transportation of oil by pipe line. In case no charge for transportation is made,

[10] C. 18, 40 Stat. 1057, 1101.

by reason of ownership of the commodity transported, or for any other reason, the person transporting by pipe line shall pay a tax equivalent to the tax which would be imposed if such person received payment for such transportation, and if the tax can not be computed from actual bona fide rates or tariffs, it shall be computed (1) on the basis of the rates or tariffs of other pipe lines for like services, as determined by the Commissioner, or (2) if no such rates or tariffs exist, on the basis of a reasonable charge for such transportation, as determined by the Commissioner."

We cannot assent to the construction which the courts below placed on these statutes. It must be conceded that the statutes are not happily phrased and that some of their provisions separately considered give color to that construction. But the statutes are to be considered, each in its entirety and not as if each of its provisions was independent and unaffected by the others. Although imposing a tax, they are to be construed reasonably and the intent and purpose of each is to be ascertained by examining all of its provisions.

From such an examination we are of opinion that both statutes disclose—that of 1917 by plain implication and that of 1918 by express declaration—an intent and purpose to impose the tax on all "transportation" of oil by pipe line—whether the pipe line be a common carrier or a private carrier, and whether it be transporting its own oil or that of others. The revenue bureau has so construed them [11] and that construction has received judicial approval.[12]

---

[11] Treasury Regulations 49, Art. 92, as amended by T.D. 3197 of July 18, 1921; Commissioner's Instructions September 6, 1921.

[12] *Meischke-Smith* v. *Wardell*, 286 Fed. 785; *Motter* v. *Derby Oil Co.*, 16 F. (2d) 717; *Dixie Oil Co.* v. *United States*, 24 F. (2d) 804; *Alexander* v. *Carter Oil Co.*, 53 F. (2d) 964; *Standard Oil Co.* v. *McLaughlin*, 67 F. (2d) 111.

Plainly both statutes disclose an intent and purpose to lay the tax equally on all transportation of oil by pipe line and to prevent exceptional relations or conditions from effecting a departure from that standard. In the main both proceed on the assumption that usually carriers will charge and shippers pay the customary commercial rate for the transportation, and therefore that the amount charged and paid will be in most instances a fair basis on which to compute the tax. But neither statute stops there. Both recognize that there may be cases where the carrier, by reason of owning the oil or for other reasons, does not receive the compensation which it otherwise would receive; and both provide, although in somewhat different terms, for using the rates of other carriers for like services as a basis for computing the tax in such cases. We do not overlook the clause " if the carrier received payment for such transportation " in the provision of the 1917 act, nor the clause " in case no charge for transportation is made " in the provision of the 1918 act. But we think it apparent from each of the acts as a whole that the words " payment " and " charge " in the quoted clauses mean a payment and charge reasonably appropriate for the service rendered. The provisions in which those words are found distinctly reflect the sense in which the words are used, for they make the rates of other carriers for like services—in short, the commercial rates in that vicinity—an alternative or substitute basis for computing the tax. Obviously the provisions do not mean that a merely nominal payment or charge will avoid the tax, for this would render them absurd; and if that be not their meaning we perceive no meaning other than that before stated which reasonably can be attributed to them.

It is said that the Commissioner of Internal Revenue has construed the provisions last considered as not including instances where there is an actual payment, even though it be much below the customary charge, and we

are asked to give effect to that construction. In this the fact is overlooked that it was the Commissioner who made the additional assessments now in question and refused the application for a refund. But it does appear that while this suit has been pending the Commissioner in several instances has allowed applications for a refund on the basis of the construction now asserted. Of that construction it suffices to say that it has been neither uniform nor of long standing, and that in these circumstances we would not be justified in yielding to it.

When the statutes as we construe them are applied to the evidence and the special findings, it is plain that the defendant's motion for judgment in his favor on the evidence is not well taken as to the first and second claims, and that his objection that the special findings do not as to them support the judgment rendered against him is well taken. Under the evidence, and also the findings, the transportation involved in these claims was a gathering service, and the proper charge therefor on which to base the tax was 12½ cents per barrel. The charges of 5 and 10 cents per barrel actually collected by the plaintiff were not appropriate for the service rendered. The plaintiff had been varying its charges without regard to the cost of the service or purpose to make the same charge to one patron as to another, and had no fixed rate that was appropriate. It therefore was necessary to resort to the accustomed rate of other carriers in the same field as a basis for the tax. Their accustomed rate for gathering service was 12½ cents per barrel. The additional assessments were made on a basis of 20 cents per barrel, and to the extent that they rested on the difference between a rate of 12½ cents and a rate of 20 cents they were excessive and invalid. As the plaintiff had paid the excess it was entitled to recover it, but the recovery should not have included what was attributable to the gathering charge of 12½ cents per barrel.

The judgments of both courts must be reversed as to the first and second claims and the cause remanded to the District Court with directions to render judgment on the findings as to these claims in conformity with the views expressed in this opinion and to respect the decision of the Circuit Court of Appeals on the third and fourth claims and the remittitur given thereunder.

*Judgments reversed.*