**OTTENHEIMER BROS., Inc., et al. v. LIBUWITZ et al.**

No. 3690.

Circuit Court of Appeals, Fourth Circuit.

Jan. 8, 1935.

John E. Gardner, of Chicago, Ill. (E. E. Ottenheimer, of Baltimore, Md., on the brief), for appellants.

Edwin S. Clarkson, of Washington, D. C., for appellee.

Before PARKER and SOPER, Circuit Judges, and MYERS, District Judge.

SOPER, Circuit Judge.

Suit was brought for infringement of two United States patents relating to refrigerated showcases, that is, the Peterson patent, No. 1,206,464, issued on November 28, 1916, on an application filed August 25, 1915, and the Ottenheimer reissue patent No. 16,941, issued April 24, 1928, upon an application filed February 8, 1928, upon an original applied for January 31, 1925. The plaintiffs relied on the single claim of the Peterson patent and claims 1 to 5 and 7 to 14, inclusive, of the Ottenheimer patent. The District Court held that the claim of the Peterson patent was valid and not infringed; that claims 1 and 11 of the Ottenheimer patent were invalid, and that the remaining claims in suit of this patent were valid, but not infringed.

The general purpose of both patents is the same, that is, to provide a showcase for perishable foods, wherein they may be displayed so as to catch the eye of the customer, and at the same time the merchandise may be protected from dust and germs and kept wholesome and suitable for consumption by refrigeration. The demand for such a device resulted in an attempt to build a refrigerated showcase as early as 1879, but the large amount of glass necessary for adequate display interfered with the refrigeration and presented a problem which Peterson and his predecessors attempted to solve.

The gist of the Peterson invention, according to the plaintiff's contention, is the provision for automatic circulation of cold air in a certain well-defined path or channel by which it goes under, above, and around the perishable goods on display in such a fashion that little of the cold air comes in contact with the glass walls of the case. The drawings in the specifications disclose a showcase with an ice chamber at the bottom which has a deep portion in the rear and a shallow portion in the front, so connected that ice may be placed in both. The top of the front portion forms a shelf which serves as the bottom of the display chamber. At the rear edge of the shelf extending its entire length, is an upstanding flange which separates the display chamber from the deeper portion of the ice chamber, except that a narrow space is left at the top of the flange for the passage of air between the two chambers. At the front of the shelf, adjacent to the edge, are a number of perforations extending its entire length and establishing communication between the shallow portion of the ice chamber beneath the shelf and the display chamber above. The circulation of the air is from the display chamber into the rear deep portion of the ice chamber, where it is chilled, and thence proceeds downward and forward through the shallow portion of the ice chamber beneath the shelf to the front, where it rises through the perforations, enters the display chamber, and passes rearwardly over the articles on display. The specifications show that the shelf and upstanding flange are fixed firmly in the structure as integral parts of the case. The display chamber rises a considerable distance in height above the shelf to a point considerably higher than the rear portion of the ice chamber.

The single claim of this patent is as follows: "A show case refrigerator, comprising an ice receiving chamber having a partially open top-side and insulated walls forming the remaining sides and bottom, a display case mounted on the front portion of said ice receiving chamber and over the

open portion of the top-side, said ice receiving chamber embodying a deep rear portion having an ice receiving opening in its top-side and a relatively shallow front portion, the bottom of said portions being coincident with each other, and a horizontal shelf having perforations adjacent its front edge and forming a top for said shallow portion and the bottom of said display case and provided at its rear edge with an upstanding flange to partially separate the display case from the deep rear portion and to provide an air passage at its top edge, the space beneath said shelf being in open communication with said deep rear portion to form a continuous ice receiving chamber extending the entire area of the bottom of said case and which is accessible through said ice receiving opening in the top of said deep rear portion."

The defendant's structure in this part of its showcase is similar in general outline. It likewise consists of a deep ice chamber in the rear connected with a shallower space in the front beneath a wire grid which forms the bottom of the display chamber; but the space beneath the grid is not used for ice. On top of the grid, pans may be placed adjacent to one another, but with narrow intervening spaces. There is also a narrow space between the front edge of the grid throughout its entire length and the front of the showcase. The interior of the display chamber is separated from the deep portion of the ice chamber by a separate piece or partition which runs from the wire grid below to the top of the ice chamber. There is no intervening space between this partition and the top of the chamber, but there are several rows of perforations in the partition. The upper rows provide access for the warmer air returning to the ice chamber, and the lower rows for the flow of air from the ice chamber to the display chamber, above and below the grid according to its elevation. The circulation of the air is rearwardly from the display chamber through the upper perforations in the partition to the ice chamber, and thence downwardly, some of it going forward beneath the grid and some above the grid. Having become warmed in its forward progress, it rises and flows backwardly to the ice chamber.

It becomes apparent, upon an examination of the prior art, that this patent, if valid, is entitled only to a narrow scope. Peterson's application was filed August 25, 1915, and, while in the Patent Office, the claims originally filed were rejected on the following patents, to wit: No. 275,620, to Farson in 1883; No. 455,915, to Weiss and Kunze in 1891; No. 998,170, to Gruendler in 1911; and No. 222,604, to Scott in 1879. These patents, as pointed out in the Patent Office, disclosed refrigerators or refrigerated showcases so constructed as to produce a circulation of air from the ice chamber to the storage chamber and return. Farson particularly showed an ice chamber in which the warm air from the storage chamber was drawn in at the top and descended to the bottom where it was conducted through a shallow cold air passage between the bottom of the structure and the bottom of the storage chamber. The air flowed through this space and thence upwardly through an outlet at the opposite end into the storage chamber, completing the circuit. Gruendler depicted a refrigerated showcase in which the cooling chamber for display in the front was higher than the ice chamber in the rear, as is the case in the patent under discussion.

The Peterson patent, therefore, was merely for improvements in the important primary features previously known; and it is clear that the gist of the patent, as the plaintiffs conceive it, had no novelty in so far as it makes provision for an automatic circulation of cold air in a well-defined path under, above, and around the perishable goods on display. The plaintiffs insist, however, that the Peterson device was designed to retain the circulation of air close to the bottom of the case and to retard the mingling of the rising air with the warmer air in the top of the showcase, and that this feature distinguishes the Peterson from the Farson patent. It is noticeable, however, that there is no mention of this feature in the Peterson patent; and it was not touched upon in the discussion which took place between the Patent Office and the applicant before the issue of the patent. There is some reference in the specifications to arrows indicating the circulation of the air, but these suggest some flow of air from the top of the case. Moreover, the effect now contended for seems to depend in large measure on a peculiar shape of case and on a lower baffle deflecting the course of the air as it issues from the shallow ice chamber, which are features of the Ottenheimer patent, the disclosures of which are in practice combined with those of the Peterson patent in the manufacture of showcases which Ottenheimer Bros., Inc., sells to the public. The Ottenheimer patent will be hereinafter discussed.

In short, if there is patentability in the Peterson structure, it lies in the particular form which that structure takes. When it is considered from this narrow viewpoint, it is seen that there are substantial differences in the defendant's structure. Ice is not used in the space below the grid. There is not a solid shelf separating the display chamber from the space beneath, but a wire grid, and, even when pans are placed thereon, the interstices between them provide communication for the air between the display chamber and the space beneath throughout the case; and hence the air is not compelled to go forward to the front of the case and seek entrance at that point to the display chamber, as in the patented structure. Furthermore, in the defendant's structure the air entering the ice chamber at the top is not compelled to go to the bottom thereof, but may return to the display chamber through the lower perforations above described. These differences do affect the defined path or channel of air which the plaintiff declares to be the distinguishing feature of this patent, and, although the differences are small in themselves, it must be borne in mind that the scope of the patent is very narrow. In our opinion, the finding of the District Judge that infringement did not exist was correct.

### Ottenheimer Patent.

This patent is designed to provide a refrigerating showcase with means for interior illumination so disposed that the heat from the lights will be minimized. Electric lamps are located in a compartment at the top separated from the display chamber by a glass partition and ventilated for the dispersement of heat. The lights are placed so as to show the goods without being visible from the outside, and devices are inserted so as to impede the mingling of the warm air that gathers immediately below the partition with the current of air which circulates in the display chamber. The problem to be overcome was to supply light to the articles on display, without interfering with their refrigeration.

The primary features of the invention in combination are a refrigerating showcase, a lighting compartment at the top, having ventilating means, a light transmitting partition separating the lighting compartment from the display compartment, and, in certain instances, means for maintaining an inert body of air for insulating purposes immediately below the light transmitting panel. As shown by the drawings, the display case has a wide bottom and a top defined by a narrow frame structure within which the lights are concealed, and which sustains the inclined glass front of the case at its upper edge. At the bottom of the case, the refrigerating means are localized substantially as indicated in the discussion of the Peterson patent. There is here, however, an additional feature, which is attached to the shelf that separates the display chamber from the cooling space beneath—that is, an upstanding flange at the front edge of the shelf rearwardly inclined forming a baffle to deflect the cold air, emerging from the perforations in the shelf, backwardly and over the storage space, so that it may return to the refrigerating chamber. At the top of the case and immediately below the lights is placed a light transmitting partition or window, and the lighting compartment is provided with an air channel to the outside for ventilation. The glass partition serves to retard the communication of heat to the storage space. In addition, means are provided for the purpose of maintaining a relatively inert body of air in the narrow upper portion of the display chamber, so that the air, heated from contact with the glass partition, may be prevented, as far as possible, from mingling with the circulating air current below. For this purpose, another baffle is provided at the top of the case, consisting of a flange depending vertically from the front edge of the glass partition, thus forming an acute angle with the front of the showcase. The purpose is to deflect the circulating air as it rises in the display chamber near the front from mingling with the warm air that accumulates adjacent to the partition.

The defendant's structure is substantially similar in its exterior outlines. The differences in the refrigerating portion of the case have been pointed out in discussing the Peterson patent; and it may be added that there is no baffle at the wire grid similar to that on the front edge of the shelf in the Ottenheimer structure. It is suggested that the front wall of the defendant's case at a point near the front edge of the wire grid takes a re-entrant form and is equivalent to the Ottenheimer baffle; but this conclusion seems quite doubtful in any event, and especially as the air current may arise from below between the pans on the grid, and is not forced to come into contact with the front of the case as in the patent sued on. It may also be said at this point that the defendant does not have a vertically dependent upper baffle. Here, also, it is

said that the defendant has an equivalent in a sharp edge at the lower corner of the front frame member inclosing the lamps; but the evidence that it serves materially to deflect the circulation from the vicinity of the lighting compartment is not convincing.

A noticeable difference exists in the arrangement of the lighting compartment. The light sockets are set in the framework which forms the top of the case; but there is no partition or window separating them from the display chamber inside. Each electric lamp bulb is separately inclosed in double glass globes, one outside the other. Between them there is an air space communicating with the outside for ventilation. The globes project a short distance below the wooden framework, so they are visible to a person of average height who stands at a distance of approximately 12 feet from the showcase. The space between the inclosed lamps is taken up with the wooden framework of the upper part of the case. The obvious purpose of the double globes inclosing the light bulbs, like the glass partition in the defendant's structure, is to retard the transmission of the heat produced by the lamps into the display chamber. It is contended that the space between the globes is filled with an inert body of warm air, and this is true in the same sense as with the space above the partition in the Ottenheimer device. Both structures, however, are provided with ventilating means to the outside air, so that the air within is not entirely inert. The inert body of air to which the patent refers, however, as shown by the specifications and the claims, is beneath the glass partition and adjacent to the upper baffle. So far as the present record discloses, this situation does not exist in the defendant's display chamber, and there are no means provided in the upper part thereof, other than the shape of the chamber itself, to prevent the rising current of air therein from coming in contact with the outside globes projecting downwardly therein, or from mingling with the warm air adjacent thereto.

There are fourteen claims in this patent, upon all of which, except claim 6, the plaintiff relies. Claims 1 and 11 are distinguishable from the rest by their breadth, since they are not limited by the inclusion of the two important features upon which the efficiency of the device seems largely to depend, that is, the baffles and the light transmitting partition. Claim 1 is as follows: "The combination of a display case having a wide bottom, a top defined by a narrow frame structure, and an inclined transparent front sustained at its upper edge by said frame structure; artificial lighting means concealed within the top of said frame structure; and a refrigerating means arranged to exert a localized refrigerating effect in the lower portion of said case."

It can hardly be said that the reference in the last part of the claim to refrigerating means in the lower portion of the case was designed to include by implication the particular devices described in the specification, and expressly mentioned in other more definite claims. The patentability of this claim seems to depend upon the assertion that Ottenheimer was a pioneer in the installation of lights in refrigerating cases. It is said that refrigerators of this sort, now so well known, were a novelty in 1925, and that there was invention in merely devising a lighted refrigerating case, constructed with a wide bottom, a narrow top, and an inclined front sustained at its upper edge by the frame structure, within which the artificial lighting means were concealed; because the narrow top with inclined sides creates a pocket at the top of the case where the warm air would necessarily gather and remain more or less inert.

From the remaining claims in suit, the plaintiffs select as typical claims 3, 12, and 13, which are as follows:

"3. The combination of a display case; means for displaying goods near the bottom of said case; refrigerating means for cooling the goods displayed; artificial lighting means housed in the top of said case and arranged to illuminate the goods displayed; and a baffle mounted in the top of said case beneath said lights, and serving to maintain there an inert body of relatively warm air."

"12. The combination of a display case having a wide bottom, a top defined by a relatively narrow frame structure, and an inclined transparent front sustained at its upper edge by said frame structure; artificial lighting means housed within said frame structure; a light transmitting partition retarding the flow of heat from said lighting means to the lower portion of said case; and refrigerating means operative in the lower portion of said case."

"13. The combination of a display case; artificial lighting means mounted in the top of said case; a light transmitting panel mounted within said case and isolating said lighting means from the main interior portion of said case; ventilating means for dis-

charging heated air from said lighting means; and refrigerating means serving to produce an air circulation in said case."

It will be observed with respect to the significant features of the structure already discussed, claim 3 refers only to the upper baffle beneath the lights and mentions that the artificial lighting is housed in the top of the case. Claim 12 makes no mention of baffles, but specifies a light transmitting partition retarding the flow of heat to the lower portion of the case, while claim 13, also omitting mention of the baffles, specifies, in addition to the light transmitting panel, ventilating means for discharging the heated air produced by the lighting means mounted in the top of the case.

The evidence offered by the plaintiffs with reference to the Ottenheimer patent consisted only of an explanation thereof, together with descriptions of the refrigerating case constructed in compliance therewith, and of the refrigerating case of the defendant alleged to infringe. At the conclusion of the prima facie case thus made out, the District Judge announced his conviction that infringement of the patent had not been shown, except as to claims 1 and 11, and that these claims are invalid because they are so broad that they do not respond to the specifications and do not describe a device operable without the specific elements named in the other claims. No occasion arose, therefore, for the defendant to produce any evidence as to the prior art or to prove the allegations of the answer in which it was asserted that the patent was void because of certain prior patents and publications therein listed; and no further evidence was taken on either side. Evidence, however, was introduced by the defendant as to the Peterson patent above described.

By the final decree of the court, it was adjudged that the Peterson patent is valid, but not infringed; that claims 1 and 11 of the Ottenheimer patent are invalid, and that the remaining claims (except claim 6 which was not involved) of the Ottenheimer patent are valid, but not infringed, and it was accordingly adjudged that the bill of complaint be dismissed. From this decree, the plaintiffs appealed.

■ There is much ground in the record before us, as we have already indicated, for the conclusion of the District Judge, in so far as the claims including one or both of the baffles as an element are concerned, that infringement was not proven, the defend-

ant's structure lacking this feature. We are not convinced, however, that there has been no infringement of the claims which omit all mention of the baffles and of the maintenance of an inert body of air below the lights, and describe, as one of the elements in the combination, a light transmitting partition separating the lights from the display chamber, for it seems that the double globes in the defendant's structure performed the equivalent function in much the same way. Nor are we satisfied that the invalidity of claims 1 and 11 or the validity of the remaining claims in suit has been made out. We mean to express no final conclusion as to any questions of validity or infringement arising under this patent, for they cannot be answered with certainty, involving, as they do, an interpretation of the claims, without a consideration of the prior patents and publications. Reference to these is made in the defendant's answer and to some extent in the defendant's brief, but as they are not included in the record, and were not presented to the District Court, we may not consider them here. The conclusion we have reached, however, makes it necessary that the case be sent back in order that both parties may have a full opportunity to present evidence bearing on all the issues involved in this patent, none of which are foreclosed by anything said in this opinion upon the Ottenheimer patent.

■ Plaintiffs take the position that the decree below is res adjudicata as between the parties and not subject to modification, in so far as it adjudicates that certain claims of the patent are valid, for the reason that the defendant took no appeal and assigned no error to this ruling. We are not in accord with this view. It sometimes happens that when a party has a decree in his favor, but not to the extent prayed for, the decree becomes binding upon him, in so far as it is unfavorable, unless he takes an appeal. In the pending case, however, the defendant was awarded all the relief to which he was entitled, namely, a dismissal of the plaintiffs' bill, and he was therefore in no position to appeal. The reversal of the decree opens up the entire case, so that all the questions involved may be adjudicated anew. See Corning v. Troy Iron & Nail Factory, 15 How. 451, 14 L. Ed. 768; Rogers v. Penobscot Mining Co. (C. C. A.) 154 F. 606; Harding v. Federal National Bank (C. C. A.) 31 F. (2d) 914; Alexander v. Cosden Co., 290 U. S. 484, 54 S. Ct. 292, 78 L. Ed. 452; Aberly v. Craven County, N. C. (C. C. A.) 70 F. (2d) 52, 54.

864

The decree of the District Court is affirmed in so far as the dismissal of the bill is based upon the Peterson patent, and is reversed in other respects, and the case remanded for further proceedings.

Affirmed in part, reversed and remanded in part.