**WILSHIRE OIL CO. v. WESTOVER, Collector of Internal Revenue.**

**SAME v. UNITED STATES.**
Nos. 5139, 5140.

District Court, S. D. California, Central Division.

Oct. 14, 1946.

Brady & Nossaman and John O. Palstine, both of Los Angeles, Cal., for plaintiff.

Tom C. Clark, Atty. Gen., Douglas W. McGregor, Asst. Atty. Gen., James M. Carter, U. S. Atty., E. H. Mitchell and George M. Bryant, Asst. U. S. Attys., and Eugene Harpole, Sp. Atty., Bureau of Internal Revenue, all of Los Angeles, Cal., for defendant.

YANKWICH, District Judge (After stating the facts above).

The above-entitled causes heretofore tried, argued and submitted, are now decided as follows:

Judgment in each case will be for the plaintiff as prayed for in the Complaint, the amount thereof to be computed according to the requirements of Subdivision (H) of Local Rule 7.

■ As a guide to counsel in the preparation of the Findings and Judgment, I indicate briefly the grounds of the decision. I think that the case presents clearly a "gathering" operation of oil within the meaning of Section 130.22 of Treasury Regulation 42 and the rulings in Alexander v. Cosden Co., 1933, 290 U.S. 484, 54 S.Ct. 292, 78 L.Ed. 452, and Caminol Co. v. United States, D.C.Cal.1941, 41 Fed.Supp. 819, decided by our colleague, Judge Campbell E. Beaumont.

In fact, it is inconceivable to me how the present case can be distinguished from those two cases.

The definition of "gathering" which the court considered in Alexander v. Cosden Co., supra [290 U.S. 484, 54 S.Ct. 295], was couched in these terms:

"Any pipe-line reaching from any point where oil is purchased or produced to the trunk or main line or to storage tanks at or near *the main* or *trunk line* or to tank farms is called a gathering line, *without regard to its size, the distance,* or the amount of oil carried through such line to the trunk or main pipe line, or to the trunk or main pipe line storage tanks, or to a tank farm.

"The gathering charge is a sum paid for the service rendered in moving oil from the point where it is tendered to or received by the carrier, whether it be the working tank at the well or the storage tanks in the field, to the trunk or main line tariff stations, or to a tank farm of the carrier or to main-line storage tanks. And the rate charged for such gathering service is a flat rate, being the same by the same carrier in the same field, whether the distance traversed by the gathering line be twenty-five yards or twenty-five miles." (Italics added.)

The corresponding definition in Section 130.22 of Treasury Regulation 42, which Judge Beaumont had before him and which controls in this case is in these words:

"Sec. 130.22. Gathering, trunk line, and loading services. The term 'gathering service' includes movements of crude petroleum or liquid products thereof through any pipe line reaching from wells, flow tanks, or settling tanks in the area or field where the product is produced, to storage tanks, *a trunk line or main line,* a refinery, or to market, or any other point within the producing area or field, *without regard to the size of the pipe, the length of the movement, or the quantity of* the specified products carried through such line. Such term does not include a movement from wells to flow tanks, or settling tanks adjacent to the wells.

"Trunk line service includes movements of the specified products from the end of gathering lines, or from unloading points such as loading racks or loading wharves *through main* or trunk pipe lines **to a** point of delivery.

"Loading service includes the loading of the specified products into tank cars or tank vessels over loading racks or loading wharves, where such service is performed as part of, or in connection with, transportation service." (Italics added.)

Thus, both definitions stress movement from wells or flow tanks through the trunk or main line of the operator. In the Caminol case, there was evidence as to the meaning which the Treasury authorities and oil representatives gave to "gathering" at the conference which preceded the promulgation of Regulation 42 and of the rate for the Los Angeles Basin.

■■ I declined to receive such testimony because the plaintiff, in this case, does not attack, as did the plaintiff in the Caminol case, the validity of the regulation. A regulation speaks for itself. And unless it is ambiguous, evidence as to its meaning is immaterial, unless its validity is challenged as an arbitrary exercise of the administrative power to promulgate rules. As the plaintiff here does not contend that the regulation and rate are arbitrary, but on the contrary, stands on them, evidence as to their meaning to those who aided in their formulation is not within the issues.

Notwithstanding this, however, there is undisputed testimony that, in the oil industry, the word "gathering" has the meaning contended for by the plaintiff. And this meaning is reflected in both definitions. These definitions of "gathering" reject specifically restrictions as to "the size of the pipe, the length of the movement or the quantity of the specified products".

The Government would now add a new restrictive element—*the field*. This phrase does not appear in the definition, but in the rate schedule which reads:

"Rate Schedule: Oil originating in Los Angeles Basins. Per Bbl.

"(1) Gathering in all Los Angeles Basin fields. (This means from the point where oil is gauged for royalty purposes to the nearest junction with main line *in the field*..........2 cents." (Italics added.)

■■ I do not believe that this restriction, if it be such, can be defended legally or realistically. Under a well-known principle applicable both to the construction of documents and to statutory construction, the descriptive phrase "in the field" added to the schedule which sought to carry into effect the regulation could not modify the full definition given to ·the operation ("gathering") in the regulation to which the schedule was to apply. For the schedules were to apply to the operations *previously defined*. If there be conflict between the two, the definition should prevail. Otherwise the entire regulation would lack consistency. And we are commanded on principle to construe the regulation as a harmonious whole, in order to give full effect to it, even if, in so doing, we have to disregard conflicting clauses. See 59 Corpus Juris, 995–1004; 50 Am.Jur., Statutes, § 352, 364; United States v. Katz, 1926, 271 U.S. 354, 46 S.Ct. 513, 70 L.Ed. 986; D. Ginsberg & Sons, Inc. v. Popkin, 1932, 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704; Burnet v. Guggenheim, 1933, 288 U.S. 280, 285, 53 S.Ct. 369, 77 L.Ed. 748; McDonald v. Thompson, 1938, 305 U.S. 263, 59 S.Ct. 176, 83 L.Ed. 164; Armstrong Co. v. Nu-Enamel Corp., 1938, 305 U.S. 315, 330-333, 59 S.Ct. 191, 83 L.Ed. 195; Haggar Co. v. Helvering, 1940, 308 U.S 389, 394, 60 S.Ct. 337, 84 L.Ed. 340; United States v. American Trucking Assns., Inc., 1940, 310 U.S. 534, 542–544; Helvering v. Hammel, 1941, 311 U.S. 504, 511, 61 S.Ct. 368, 85 L.Ed. 303, 131 A.L.R. 1481; United States v. Public Utilities Commission, 1945, 80 U.S.App.D.C. 227, 151 F.2d 609, 613. Courts thus try to avoid literal interpretations which would destroy the harmony of a statute or result in absurdity. I fear that the interpretation contended for here would have such results. Clearly, if, as the definition says, *the length of the movement* is immaterial, it matters not whether, *all other things being equal,* the movement is *within or without the field*. Otherwise, we would have the anomalous situation of a movement of forty miles in an Oklahoma field being considered "gathering" merely because it is in a field the area of which is spread out, while a limited area of some eleven miles in a California field is treated as "gathering" and "transportation". Oklahoma operators would be subsidized for the mere vastness of their field and California operators penalized for the compactness of theirs. As neither is a matter of choice or due to any act of the operator, but both are traceable to geological structure, it would be illogical and impractical to draw a line of demarcation based on what might be called an "intramural situation"—a situation within the field. And as between operators in the same Los Angeles basin, it would penalize "length" of operation in the teeth of the definition. Were it adopted, the operator in the field in or near which storage is possible, such as Santa Fe Springs, would pay a "gathering" rate, while the operator in a field like Hunting-

ton Beach within or near which storage is impossible, would pay both a "gathering" and "transportation" rate.

■ Thus an inequality would result which, I assume, it was the very object of the regulation to avoid. For, if anything can be gathered from its terms, it is that it seeks to establish a fair and equitable rate in the whole Basin, *equal as to all operators similarly situated.* The Government's contention would destroy the symmetry necessary to make such regulation reasonable as act and valid as law.

Hence the ruling above made.

Counsel for the plaintiff will prepare Findings and Judgment in both cases and make the proper computation under Local Rule 7.