STONER-MUDGE, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 21174.   Promulgated October 10, 1950.

*Jacquin D. Bierman, Esq.*, for the petitioner.
*Edwin P. Friedberg, Esq.*, for the respondent.

#### OPINION.

LEECH, *Judge:* The respondent determined deficiencies in excess profits taxes against petitioner for the fiscal years ending September 30, 1944, 1945, and 1946 in the respective amounts of $1,618.72, $14,559.35, and $1,369.40. The question presented is whether petitioner's acquisition on August 31, 1944, by purchase from shareholders of 100 per cent of the outstanding stock of Impervious Varnish

Co., constituted a capital reduction within the intendment of section 713 (g) (5) of the Internal Revenue Code.

The facts have been stipulated and are so found.

Petitioner is a Pennsylvania corporation having its principal office in Pittsburgh, Pennsylvania. It is engaged in the manufacture of paints, lacquers and other chemicals. It filed its returns for the periods involved with the collector of internal revenue for the 23rd district of Pennsylvania.

Impervious Varnish Co. is a Pennsylvania corporation with its principal office in Rochester, Pennsylvania. At all times relevant herein, it has been engaged in the manufacture of paints, lacquers and varnish. As of August 31, 1944, its authorized and outstanding capital stock consisted of 7,500 shares of no-par common stock.

In August and prior to August 31, 1944, petitioner borrowed from the Union National Bank of Pittsburgh, Pennsylvania, the sum of $210,000. On August 31, 1944, with such funds, it purchased from the stockholders of Impervious Varnish Co. all of the capital stock of that corporation, paying therefor the sum of $207,624.75.

As of January 1, 1940, petitioner had accumulated earnings and profits of $123,360.97, and as of August 31, 1944, its accumulated earnings and profits were $328,550.84.

The accumulated earnings and profits of petitioner at the end of each of the taxable years involved were as follows:

| | |
|---|---|
| Sept. 30, 1944 | $284,965.82 |
| Sept. 30, 1945 | 307,851.57 |
| Sept. 30, 1946 | 321,714.66 |

During all the years relevant herein, petitioner's excess profits credit has been computed on the basis of income in accordance with the provisions of section 713 of the Internal Revenue Code. Petitioner had no capital additions entering into the computation of its excess profits credit based on income for any of its excess profits tax taxable years.

During all the relevant years herein, the excess profits credit of Impervious Varnish Co. has been computed on the basis of invested capital in accordance with the provisions of section 714 of the Internal Revenue Code.

In determining petitioner's excess profits credit based on income, the respondent determined that the adjusted basis of the stock of Impervious Varnish Co. in the hands of petitioner, to wit: $207,624.75, constituted a capital reduction under section 713 (g) (5).[1]

---

[1] SEC. 713. EXCESS PROFITS CREDIT—BASED ON INCOME.

\* \* \* \* \* \* \*

(g) ADJUSTMENTS IN EXCESS PROFITS CREDIT ON ACCOUNT OF CAPITAL CHANGES.—For the purposes of this section—

\* \* \* \* \* \* \*

(5) If, on any day of the taxable year, the taxpayer and any one or more other corporations are members of the same controlled group, then the daily capital reduc-

Petitioner makes no claim that it was not a member of a controlled group, since it owned 100 per cent of the stock of Impervious Varnish Co. Petitioner apparently concedes, as we think it must, that if the provisions of section 713 (g) (5) are literally applied the respondent's determination is correct. Petitioner, however, insists that such section must be construed in the light of the Congressional purpose, which was to provide an adjustment designed to prevent a duplication of excess profits credit resulting from certain capital changes; that petitioner's acquisition of such capital stock did not result in any duplication of excess profits credit as between it and the Impervious Varnish Co., and that it did not constitute a capital change. Petitioner would have us invoke the canon of construction that courts are not bound to apply the literal phrasing of statutes when the clearly indicated purpose of Congress seems to require broader or narrower interpretation. *Smith Enterprise Co.* v. *Commissioner*, 167 Fed. (2d) 356; *Carlisle* v. *Commissioner*, 165 Fed. (2d) 645; *Darby-Linde Co.* v. *Alexander*, 51 Fed. (2d) 56; *Federal Deposit Ins. Corp.* v. *Tremaine*, 133 Fed. (2d) 827. Conceding the soundness of the rule, we think the rule may not properly be invoked here since the basis for its application is that the Congressional purpose is not sufficiently disclosed or clearly indicated. We may assume that one of the purposes of enacting section 713 (g) (5) was to prevent the duplication of excess

tion of the taxpayer for such day shall be increased by whichever of the following amounts is the lesser:

(A) The aggregate of the adjusted basis (for determining loss upon sale or exchange) of stock in such other corporation (or if more than one, in such other corporations) acquired by the taxpayer after the beginning of the taxpayer's first taxable year under this subchapter. minus the aggregate of the adjusted basis (for determining loss upon sale or exchange) of stock in such other corporation (or if more than one, in such other corporations) disposed of by the taxpayer prior to such day and after the beginning of the taxpayer's first taxable year under this subchapter. or

(B) The excess of the aggregate of the adjusted basis (for determining loss upon sale or exchange) of stock in all domestic corporations and of obligations described in section 22 (b) (4), held by the taxpayer at the beginning of such day over the aggregate of the adjusted basis (for determining loss upon sale or exchange) of stock in all domestic corporations and of obligations described in section 22 (b) (4), held by the taxpayer at the beginning of its first taxable year under this subchapter.

If any stock or obligations described in subparagraph (A) or (B) was disposed of prior to such day, its basis shall be determined under the law applicable to the year in which so disposed of. The excluded capital of the taxpayer for such day shall be reduced by the amount by which the taxpayer's daily capital reduction for such day is increased under this paragraph. As used in this paragraph, a controlled group means one or more chains of corporations connected through stock ownership with a common parent corporation if (i) more than 50 per centum of the total combined voting power of all classes of stock entitled to vote, or more than 50 per centum of the total value of shares of all classes of stock, of each of the corporations (except the common parent corporation) is owned directly by one or more of the other corporations and (ii) the common parent corporation owns directly more than 50 per centum of the total combined voting power of all, classes of stock entitled to vote, or more than 50 per centum of the total value of shares of all classes of stock. of at least one of the other corporations.

profits credit. Cf. *Morganton Full Fashioned Hosiery Co.*, 14 T. C. 695. But that does not mean that such was its sole purpose. The statute itself expresses no such limited purpose.

The general purpose of the excess profits tax was to provide revenue for the war emergency out of abnormal profits from large governmental expenditures for the war effort. *Commissioner* v. *South Texas Lumber Co.*, 333 U. S. 496. The act imposing the tax contains numerous provisions for computing the excess profits tax, including various provisions relating to allowances, credits, relief, etc. True, we are here primarily concerned with the credit provisions contained in section 713 (g) (5). It is a cardinal rule, however, that a statute is to be construed as a whole, and not as though each of its provisions was independent and unaffected by others. *Alexander* v. *Cosden Pipe Line Co.*, 290 U. S. 484, 496; *Helvering* v. *New York Trust Co.*, 292 U. S. 455. The particular section of the statute here in controversy is to be read in the light of the purposes for which the Excess Profits Tax Act was enacted.

Section 713 (g) (5) was added to section 713 (g) by section 216 of the Revenue Act of 1942. It was in force during all the taxable periods involved herein. That section clearly prescribes what is to be treated as a reduction of capital for the purpose of computing the excess profits credit based on income. If it were the intention of Congress that there should be a reduction of capital only where a duplication of excess profits credit would result, it is fair to assume more appropriate language would have been used. In neither the Senate Report [2] nor the House Committee Report [3] is there any indication that the statute was to be so limited. Their respective statements explaining the provisions are substantially the same. The Finance Committee Report is set forth in the margin.[4]

---

[2] S. Rept. 1631, 77th Cong., 2d Sess., C. B. 1942-2, p. 644.

[3] H. Rept. 2333, 77th Cong., 2d Sess., C. B. 1942-2, p. 475.

[4] This section, which is identical with section 210 of the House bill, is applicable to taxable years beginning after December 31, 1941, and applies to any taxpayer which is a member of a controlled group and which owns stock in one or more corporations in such controlled group acquired after the beginning of the taxpayer's first taxable year under the excess profits tax. In general, it provides that such stock owned by the taxpayer on any day of the taxable year shall increase the daily capital reduction for such day (or, if the taxpayer has made no previous distributions resulting in daily capital reduction, such stock owned by the taxpayer on such day shall be a daily capital reduction for such day).

Two rules are provided by this section for the determination of the amount of the daily capital reduction on account of such stock for any day of a taxable year beginning after December 31, 1941. The first rule is to the effect that the daily capital reduction on account of such stock for such day shall be the aggregate of the adjusted basis (for determining loss upon sale or exchange) of the stock acquired by the taxpayer after the beginning of the taxpayer's first taxable year under the excess profits tax, minus the aggregate of the adjusted basis (for determining loss upon sale or exchange) of the stock disposed of by the taxpayer prior to such day and after the beginning of the taxpayer's first taxable year under the excess profits tax. The second rule limits the amount of such daily capital reduction to the excess of the aggregate of the adjusted basis (for determining loss upon sale or exchange) of excluded capital, held by the taxpayer at the beginning of such day, over

Petitioner argues that to apply the statute literally produces a harsh and inequitable result under the particular circumstances disclosed here. That such a literal application of the section may possibly result in hardship does not empower us to "sacrifice the plain, obvious and rational meaning of the statute." *Deputy* v. *duPont*, 308 U. S. 488, 498.

The language of section 713 (g) (5) being clear and unambiguous, we apply it as written.

Petitioner also contends that section 713 (g) (5), relating to adjustments resulting from *capital* changes, means changes in its capital stock, and that the circumstances of its acquisition of all the capital stock of the Impervious Varnish Co. with borrowed money did not constitute such a capital change. We think petitioner takes too narrow a view. It seems clear to us that the term "capital" in the statute is used in its broader sense and designates that portion of the corporate assets which is utilized in the conduct of the business and for the purpose of deriving profits.

Petitioner, in the alternative, advances the argument that since a corporation is not to be treated as a member of a controlled group until it acquires more than 50 per cent of the stock of another corporation, the capital reduction should not exceed in the instant case 50 per cent of its cost of such stock. Stated differently, petitioner says since ownership of 50 per cent of the stock of another corporation is treated as excluded capital instead of a reduction in capital, to hold that it sustains a capital reduction of 51 per cent merely because it acquires one additional share produces a curious and illogical result. The basis of the rule is "control." The statute makes no provision for computing the capital reduction on any percentage of the adjusted cost basis of the shares held in excess of the number constituting control. The statute merely provides how the capital reduction is to be computed where control exists. There is no merit in petitioner's alternative position.

We, therefore, hold that the respondent has properly applied the provisions of the statute in computing petitioner's capital reduction, and his determination is sustained.

Reviewed by the Court.

*Decision will be entered for the respondent.*

the aggregate of the adjusted basis (for determining loss upon sale or exchange) of excluded capital, held by the taxpayer at the beginning of its first taxable year under the excess profits tax. The daily capital reduction on account of such stock for any such day shall be an amount equal to the lesser of the amounts determined by the application of the foregoing rules.

In case any stock or obligation referred to in section 215 is disposed of prior to the day for which the computation is being made, its basis shall be determined under the law applicable to the year in which so disposed of. The excluded capital of the taxpayer for any such day shall be reduced by the amount by which the taxpayer's daily capital reduction for such day is increased under this section.