116 T.C. No. 4

UNITED STATES TAX COURT

RIDGE L. HARLAN AND MARJORY C. HARLAN, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

THEODORE S. OCKELS AND ROSEMARIE G. OCKELS, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 21214-92, 24609-92.        Filed January 17, 2001.

Ps are partners in partnerships (the 1st-tier partnerships); some of the 1st-tier partnerships are partners in other partnerships (the 2d-tier partnerships). R maintains that the 6-year period of limitations under sec. 6501(e)(1)(A), I.R.C. 1986, applies to notices of deficiency sent in 1992 with respect to Ps' 1985 tax year. In determining the applicability of sec. 6501(e)(1)(A), I.R.C. 1986, R includes in Ps' "gross income stated in the return" Ps' distributive shares of the gross incomes of the 1st-tier partnerships, but does not take account of the 1st-tier partnerships' distributive shares of the gross incomes of the 2d-tier partnerships. Ps contend to the contrary.

Held: In determining the amount of "gross income stated in the return" (the denominator in the 25-percent test of sec. 6501(e)(1)(A), I.R.C. 1986) for petitioners, the 2d-tier partnerships' information returns are treated as

adjuncts to, and parts of, the 1st-tier partnerships'
information returns, which in turn are treated as adjuncts
to, and parts of, petitioner's tax returns.


Craig A. Etter, Timothy J. Jessell, and Michael I. Sanders,
for petitioners.

Carol E. Schultze, for respondent.


OPINION

CHABOT, Judge: This matter is before us for determination
as to whether, in applying the 6-year period of limitations (sec.
6501(e)(1)(A))[1], when a petitioner's tax return reflects income
from a partnership (hereinafter sometimes referred to as the 1st-
tier partnership) that is itself a partner in another partnership
(hereinafter sometimes referred to as the 2d-tier partnership),
the statutory phrase "gross income stated in the return" (the
denominator in the 25-percent test) requires a tracing of the
flow of gross income from not only the 1st-tier partnership's
information return but also from the 2d-tier partnership's
information return in order to determine petitioners' appropriate

---

[1]Unless otherwise indicated, all subtitle, chapter,
subchapter, and section references are to subtitles, chapters,
subchapters, and sections of the Internal Revenue Code of 1954 as
in effect for 1985; except that references to section 6501 are to
section 6501 of the Internal Revenue Code of 1986 as in effect
for notices of deficiency mailed in 1992.

distributive share of partnership gross income from the 1st-tier partnership's tax return.[2]

Respondent determined deficiencies in individual income tax and additions to tax under sections 6653(a) (negligence, etc.) and 6661 (substantial understatement) against (1) petitioners Ridge L. Harlan (hereinafter sometimes referred to as Ridge) and Marjory C. Harlan (hereinafter sometimes referred to as Marjory) (Ridge and Marjory are hereinafter sometimes referred to collectively as the Harlans) and (2) petitioners Theodore S. Ockels (hereinafter sometimes referred to as Theodore) and Rosemarie G. Ockels (Theodore and Rosemarie G. Ockels are hereinafter sometimes referred to collectively as the Ockels) for 1985 as follows:

_____

[2]On brief, petitioners state that this is a jurisdictional issue.  However, the instant cases are deficiency cases; thus, the statute of limitations is an affirmative defense and not a jurisdictional issue.  See sec. 7459(e); Rule 39; Davenport Recycling Associates v. Commissioner, 220 F.3d 1255, 1259-1260 (11th Cir. 2000), affg. T.C. Memo. 1998-347 (in deficiency cases, assertion of the bar of the statute of limitations is an affirmative defense, not a jurisdictional question); Columbia Building, Ltd. v. Commissioner, 98 T.C. 607, 611 (1992) (same); compare Commissioner v. Lundy, 516 U.S. 235 (1996) (in refund cases in the Tax Court, the statute of limitations is a jurisdictional question).

Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure.

| | | Additions to Tax | | |
|---|---|---|---|---|
| Petitioners | Deficiency | Sec. 6653(a)(1) | Sec. 6653(a)(2) | Sec. 6661 |
| The Harlans | $548,186 | $27,409 | [1] | $137,047 |
| The Ockels | 62,490 | 3,125 | [2] | 15,623 |

[1] 50 percent of interest due on $548,186.
[2] 50 percent of interest due on $62,490.

The instant cases have been severed from docket Nos. 15653-92 and 15654-92[3] for briefing and opinion on the 2d-tier partnership issue.

The 2d-tier partnership issue has been submitted fully stipulated; the stipulations and the stipulated exhibits are incorporated herein by this reference.

## Background

When the respective petitions in the instant cases were filed, the Harlans resided in Hillsborough, California, and the Ockels resided in Lafayette, California.

[3]Cases of the following petitioners had originally been consolidated: (1) Alan B. Steiner and Barbara W. Steiner, docket No. 28182-92; (2) Estate of James Beaton, deceased, Shirley Beaton, Executrix, and Shirley Beaton, docket No. 28181-92; (3) James F. Ottinger and Bonnie J. Ottinger, docket No. 15654-92; (4) Theodore S. Ockels and Rosemarie G. Ockels, docket No. 24609-92; (5) Ridge L. Harlan and Marjory C. Harlan, docket No. 21214-92; and (6) Estate of William H. Abildgaard, deceased, William Abildgaard, Jr., Executor, and Marlene Abildgaard, docket No. 15653-92. See Steiner v. Commissioner, T.C. Memo. 1995-122. The Beaton, docket No. 28181-92, and Steiner, docket No. 28182-92, cases were severed from the group and were disposed of on another issue. See Beaton v. Commissioner, T.C. Memo. 1997-140.

## A. The Harlans

The Harlans filed their joint 1985 tax return on or about August 12, 1986. On June 26, 1992, respondent issued a notice of deficiency to the Harlans for 1985.

The 3-year period of limitations for assessment of tax under section 6501(a) with respect to the Harlans for 1985 expired before the notice of deficiency was mailed. The Harlans did not execute any extensions of the period of limitations on assessment with respect to 1985.

The Harlans' 1985 tax return has attached to the Form 1040, the following: Schedules A, B, C, D, E, and SE; Forms 3468, 3800, 4136, 4797, 4868, 6251, 1116, 2210, 4562, 4835, 4952; 27 numbered "statements"; and a Treasury Department Form TD F 90-22.1.

The Harlans' 1985 tax return shows an ordinary loss of $56,069 from several partnerships, identified by name, address, and employer identification number. The record includes 1985 partnership information returns, or parts of those returns, from each of the identified partnerships, as well as stipulations as to the Harlans' shares of the partnerships' gross incomes, determined without regard to the 2d-tier partnership gross incomes.

During 1985, Ridge was a partner in three single-tier partnerships, and Marjorie was a partner in one single-tier partnership.

During 1985, Ridge was a partner in two multiple tier partnerships: (1) Pacific Real Estate Investors Partnership (hereinafter sometimes referred to as Pacific) and (2) Carlyle Real Estate Limited Partnership-VI (hereinafter sometimes referred to as Carlyle).

Pacific was a partner in at least one other partnership. Pacific's 1985 information return shows an ordinary loss of $7,705 from another partnership, identified by name and employer identification number. The record does not include information as to the amount of the gross income stated on this 2d-tier partnership's 1985 information return.

Carlyle was a partner in several other partnerships. Carlyle's 1985 information return shows ordinary income of $674,791.81 from four other partnerships, each identified by name and employer identification number. The record does not include information as to the amounts of Carlyle's shares of the gross incomes stated on these 2d-tier partnerships' 1985 information returns.

On one of the schedules attached to their 1985 tax return, the Harlans show their gross income as $1,216,099. This schedule is for purposes of Form 1116, part I, line 2.d.(v), and is an element of the formula used in the computation of their foreign tax credit. Nevertheless, the parties have stipulated that the gross income for purposes of section 6501(e) that is "reflected

on the Harlan's 1985 Form 1040 and on the first-tier partnership returns of the partnerships in which Ridge or Marjory Harlan owned a direct interest", i.e., excluding "the flow of gross income from" the 2d-tier partnerships, is $1,410,077.

B.    The Ockels

The Ockels filed their 1985 joint tax return on October 15, 1986.  On August 11, 1992, respondent issued a notice of deficiency to the Ockels for 1985.

The 3-year period of limitations for assessment of tax under section 6501(a) with respect to the Ockels for 1985 expired before the notice of deficiency was mailed.  The Ockels did not execute any extensions of the period of limitations on assessment with respect to 1985.

The Ockels' 1985 tax return has, attached to the Form 1040, the following:  Schedules A, B, C, D, E, and SE; Forms 2688, 3468, 4797, 6198, 6251, 4684, 8283, 4255, 4562, 4868, 4952, 8082, 6248; and numerous schedules, attachments, and other documents.

The Ockels' 1985 tax return shows net income of $7,900 from several partnerships and one independent oil producer, identified by name and employer identification number.  The record includes 1985 partnership information returns, or parts of those returns, from each of the identified partnerships, and a 1985 windfall profit tax information return (Form 6248) from the oil producer, as well as stipulations as to Theodore's shares of the

partnerships' gross incomes, and the oil producer's gross sales price, determined without regard to the 2d-tier partnerships' gross incomes.

During 1985, Theodore was a partner in nine single-tier partnerships.

During 1985, Theodore was a partner in one multiple tier partnership, Mission Resources Development Drilling Program - Belridge II (hereinafter sometimes referred to as Mission Resources). Mission Resources was a partner in at least one other partnership. Mission Resources' 1985 information return shows ordinary income of $286,137 from another partnership, identified by name but not otherwise. The record does not include information as to the amount of the gross income stated on this 2d-tier partnership's 1985 information return.

The Ockels do not claim a foreign tax credit on their 1985 tax return, and so do not have any equivalent of the Harlans' above-noted schedule. The parties have stipulated that the gross income for purposes of section 6501(e) that is "reflected on the Ockels' 1985 Form 1040 and on the first-tier partnership return [sic] of the partnerships in which the Ockels owned a direct interest", i.e., excluding "the flow of gross income from" the 2d-tier partnerships, is $407,819. This total includes Theodore's share of the gross receipts of the independent oil producer.

C.   The VeloBind Stock

At the start of 1985, Ridge owned 80,000 shares of junior common stock in VeloBind that he had bought in 1983 for $3 per share.  In 1985, Theodore owned 7,500 shares of junior common stock in VeloBind that he had bought in 1983 for $3 per share. In Steiner v. Commissioner, T.C. Memo. 1995-122, we determined that these shares converted to VeloBind common stock in 1985. The VeloBind common stock traded at $17 per share on February 12, 1985.

In the respective notices of deficiency, respondent determined that the Harlans[4] and the Ockels[5] received 1985 income from the stock conversion.

## Discussion

I.  The Parties' Contentions; Summary of Court's Conclusion

Petitioners have properly raised in their petitions the affirmative defense of the statute of limitations for 1985.  See Rule 39.

The parties have stipulated that the 3-year period of limitations (sec. 6501(a)) expired for both the Harlans and the

---

[4]In the notice of deficiency, respondent determined that the Harlans' income from the VeloBind stock conversion was $1,275,200.  However, in respondent's answer and on brief, respondent asserts the correct income amount was $1,120,000.

[5]In the notice of deficiency, respondent determined that the Ockels' income from the VeloBind stock conversion was $119,550. However, in respondent's answer and on brief, respondent asserts the correct income amount was $105,000.

Ockels before respondent issued the respective notices of deficiency.

Respondent contends that the instant cases fall within an exception to the 3-year rule--the 6-year statute of limitations set forth in section 6501(e)(1)(A)--because each set of petitioners has omitted from gross income more than "25 percent of the amount of gross income stated in the return" for that set of petitioners.

Petitioners contend that the income that respondent contends was omitted from their 1985 tax returns[6] is less than 25 percent of the amounts of gross income stated in their respective tax returns because (1) their tax returns are treated as having set forth their shares of the gross incomes set forth on the information returns of their 1st-tier partnerships and (2) the information returns of their lst-tier partnerships should be treated as setting forth their 1st-tier partnerships' respective shares of the gross incomes set forth on the information returns of their 2d-tier partnerships.

Respondent argues that the 2d-tier partnerships' information returns are to be ignored because (1) "The plain language of the Code and the regulations" require consideration of only

_____

[6]The question of whether petitioners omitted any gross income--whether the 1985 conversions of the Velobind stock produced gross income and, if so, then in what amounts--has been set aside for determination at a later date.

petitioners' tax returns and not the partnerships' information returns, (2) the regulations' concept of setting forth on a tax return applies only to what is set forth on petitioners' tax returns, and (3) a contrary interpretation "would impose an excessive administrative burden on the Service and on taxpayers."

Petitioners maintain that section 702(c) and the regulations plainly require that whenever it is necessary to determine the amount of a partner's gross income, that amount is to include the partner's distributive share of the partnership's gross income. As applied to the instant cases, in order to determine the amount of petitioners' gross income from the 1st-tier partnerships, there must first be determined the amount of each 1st-tier partnership's gross income. Section 702(c)'s rule then applies, petitioners contend, so that in order to determine the amount of any 1st-tier partnership's gross income, there must first be determined the amount of each 2d-tier partnership's gross income. Petitioners maintain that this rule is consistent with the "look-through" approaches of other subchapter K provisions (e.g., in secs. 1.704-3(a)(8), 1.704-2(k), and 1.752-4, Income Tax Regs.), and provisions outside subchapter K, such as sections 108(a)(1)(C) and 904(d).

Under section 6501(e)(1)(A), the denominator of the 25-percent fraction is "the amount of gross income stated in the return". But the taxpayer ordinarily does not state the amount

of gross income anywhere on the tax return.[7]  As a result, we must look through the various forms, etc., attached to the taxpayer's basic tax return form in order to identify the components of gross income that must be added together in order to determine the total amount of gross income stated in the taxpayer's tax return.  It has long been accepted that, for these purposes, the information return of the taxpayer's properly identified 1st-tier partnership is treated as part of the taxpayer's tax return.  But the 1st-tier partnership's information return suffers from the same "defect" in that we must look through the various forms, etc., attached to the 1st-tier partnership's information return in order to identify the components of gross income that must be added together in order to determine the total amount of gross income stated in the 1st-tier partnership's information return.  Every explanation that has been drawn to our attention, or that we have discovered, as to why we must treat the properly identified 1st-tier partnership's information return as part of the taxpayer's tax return applies with equal force to treating the properly identified 2d-tier partnership's information return as part of the 1st-tier partnership's information return.

Accordingly, we agree with petitioners' conclusion.

_____

[7]As is the case in the Harlan's docket, even if the taxpayer does state such an amount and clearly labels it as such, that may not be the correct amount for purposes of sec. 6501(e)(1)(A), even if it is the correct amount for other purposes.

II. <u>Overview</u>

In general, section 6501(a)[8] bars assessment of an income

---

[8]Sec. 6501 provides, in pertinent part, as follows:

SEC. 6501. LIMITATIONS ON ASSESSMENT AND COLLECTION.

(a) General Rule.--Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.

  *  *  *  *  *  *  *

(e) Substantial Omission of Items.--Except as otherwise provided in subsection (c)--

  (1) Income Taxes.--In the case of any tax imposed by subtitle A [relating to income taxes]--

    (A) General rule.--If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.  For purposes of this subparagraph--

      (i) In the case of a trade or business, the term "gross income" means the total of the amounts received or accrued from the sale of goods or services (if such amounts are required to be shown on the return) prior to diminution by the cost of such sales or services; and

      (ii) In determining the amount omitted from gross income, there shall not be taken into account any amount which is omitted from gross income stated in the return if such

(continued...)

tax deficiency more than 3 years after the later of the date the tax return was filed or the due date of the tax return. The parties stipulated that the 3-year general period of limitations on assessment under section 6501(a) expired for petitioners' 1985 tax year before the respective notices of deficiency were sent. Respondent has the burden of proving the applicability of an exception to the general limitations period. See Rule 142; Reis v. Commissioner, 142 F.2d 900 (6th Cir. 1944), affg. 1 T.C. 9, 12 (1942), as modified by a Memorandum Opinion of this Court dated June 4, 1943. In particular, as respondent acknowledges, in order for the 6-year period of limitations under section 6501(e) to apply, respondent must show that the taxpayer has omitted an amount of gross income which is more than 25 percent of the amount of gross income stated in the tax return. See Davenport v. Commissioner, 48 T.C. 921, 928 (1967) (taxpayers' tax returns showed net losses from a partnership; 6-year statute of limitations did not apply because the Commissioner "has not shown whether a partnership return was filed for those years and if so the gross income reported thereon"); Hurley v. Commissioner, 22 T.C. 1256, 1264-1265 (1954), affd. 233 F.2d 177 (6th Cir. 1956)

---

[8](...continued)
amount is disclosed in the return, or in a statement attached to the return, in a manner adequate to apprise the Secretary of the nature and amount of such item.

(using net worth method, Commissioner showed omission of net income; held, Commissioner failed to carry burden of proving how much of this omission was due to omission of gross income); Seltzer v. Commissioner, 21 T.C. 398, 402-403 (1953) (Commissioner failed to prove taxpayer's basis in a sold capital asset, and so "has not sustained his burden of proof to show" that taxpayer omitted gross income which was more than 25 percent of the gross income stated in her tax return); see also Colestock v. Commissioner, 102 T.C. 380, 383, 390-391 (1994); Estate of Fry v. Commissioner, 88 T.C. 1020, 1023 n.8 (1987); Stratton v. Commissioner, 54 T.C. 255, 289 (1970), and cases there cited; Philipp Bros. Chemicals, Inc. v. Commissioner, 52 T.C. 240, 254-255 (1969), affd. 435 F.2d 53 (2d Cir. 1970); Rhombar Co. v. Commissioner, 47 T.C. 75, 85 (1966), affd. 386 F.2d 510 (2d Cir. 1967); Bardwell v. Commissioner, 38 T.C. 84, 92 (1962), affd. on another issue 318 F.2d 786 (10th Cir. 1963); Green v. Commissioner, 7 T.C. 263, 277 (1946), affd. 168 F.2d 994 (6th Cir. 1948).

The test for the extended limitations period under section 6501(e) may be expressed as a fraction. The numerator is the amount of properly includable gross income that was omitted from a taxpayer's return, and the denominator is "the amount of gross income stated in the return". Sec. 6501(e)(1)(A). If the fraction exceeds 25 percent, then the 6-year limitations period

under section 6501(e) applies.  In the instant cases, the parties' dispute focuses on the denominator.

Two aspects of this dispute make it clear that more is involved than meets the eye, as follows:

Firstly, although the statutory language is "the amount of gross income stated in the return" (emphasis added), both sides agree that, where the taxpayer is a partner in a 1st-tier partnership, the language is treated as including amounts that do not appear anywhere on the only document that has been filed as the taxpayer's tax return.

Secondly, although the potential for the parties' dispute herein has existed since the 1934 enactment of the predecessor of section 6501(e)(1)(A), both sides agree that this is a matter of first impression.

In light of the foregoing, we start our analysis with matters that are not in dispute between the parties, in order better to understand the context in which the disputed matters operate.

III.  Evolution of the Statute

Section 250(d) of the Revenue Act of 1918 (Pub. L. 65-254, 40 Stat. 1057, 1083) provided a general 5-year statute of limitations, but no limit in the case of fraud.

Section 250(d) of the Revenue Act of 1921 (Pub. L. 67-98, 42 Stat. 227, 265) reduced the general period of limitations to 4 years.

The Revenue Act of 1924 (Pub. L. 68-176, 43 Stat. 253, 299) kept the 4-year general statute of limitations, as section 277(a)(1); it provided that there was no limit in the case of fraud or failure to file a tax return, as section 278(a).

Section 277(a)(1) of the Revenue Act of 1926 (Pub. L. 69-20, 44 Stat. 9, 58, 59) reduced the general period of limitations to 3 years; the 1926 Act left unchanged the fraud and failure-to-file rule.

Section 275(a) of the Revenue Act of 1928 (Pub. L. 70-562, 45 Stat. 791, 856, 857) reduced the general statute of limitations to 2 years; section 276(a) of the 1928 Act left unchanged the fraud and failure-to-file rule.  Both of these rules remained unchanged by the Revenue Act of 1932.  Pub. L. 72-154, 47 Stat. 169, 237, 238.

In what became the Revenue Act of 1934 (Pub. L. 73-216, 48 Stat. 680), the House Bill provided (1) that the general statute of limitations be lengthened to 3 years and (2) that the fraud and failure-to-file rule be expanded to apply also to substantial understatements of gross income.  The Ways and Means Committee report (H. Rept. 73-704, pp. 34, 35 (1934), 1939-1 C.B. (Part 2) 554, 580) explains these changes as follows:

Section 275. Period for assessment and collection. The present law limits the time for assessments to 2 years from the date the return is filed. Experience has shown that this period is too short in a substantial number of large cases, resulting oftentimes in hastily prepared determinations with the result that additional burdens are thrown upon taxpayers in getting ill-advised assessments removed. In other cases, revenue is lost by reason of the fact that sufficient time is not allowed for disclosure of all the facts. Subsection (a), therefore, increases the period of 2 years to 3 years.

\* \* \* \* \* \* \*

Section 276(a). No return or false return. The present law permits the Government to assess the tax without regard to the statute of limitations in case of failure to file a return or in case of a fraudulent return. The change in this section continues this policy, but enlarges the scope of this provision to include cases wherein the taxpayer understates gross income on his return by an amount which is in excess of 25 percent of the gross income stated in the return. It is not believed that taxpayers who are so negligent as to leave out of their returns items of such magnitude should be accorded the privilege of pleading the bar of the statute.

The House passed the following statutory language:

SEC. 276.   SAME--EXCEPTIONS.

(a) No Return or False Return.--If the taxpayer fails to file a return, or files a false or fraudulent return with intent to evade tax, <u>or omits from gross income an amount properly includible therein which is in excess of 25 per centum of the amount of gross income stated in the return</u>, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time.  [Emphasis added.]

In the Senate, the Finance Committee changed the approach, explaining in the report as follows (S. Rept. 73-558, pp. 43-44 (1934), 1939-1 C.B. (Part 2) 586, 619-620):

Section 275.  Period for assessment and collection

The present law limits the time for assessments to 2 years from the date the return is filed.  Experience has shown that this period is too short in a substantial number of large cases resulting oftentimes in hastily prepared determinations, with the result that additional burdens are thrown upon taxpayers in contesting ill-advised assessments. In other cases, revenue is lost by reason of the fact that sufficient time is not allowed for disclosure of all the facts.  Subsection (a), therefore, increases the period of 2 years to 3 years.

*    *    *    *    *    *    *

The present law permits the Government to assess the tax without regard to the statute of limitations in case of failure to file a return or in case of a fraudulent return. The House bill continues this policy, but enlarges the scope of this provision to include cases wherein the taxpayer understates gross income on his return by an amount which is in excess of 25 percent of the gross income stated in the return.  Your committee is in general accord with the policy expressed in this section of the House bill.  However, it is believed that in the case of a taxpayer who makes an honest mistake, it would be unfair to keep the statute open indefinitely.  For instance, a case might arise where a taxpayer failed to report a dividend because he was erroneously advised by the officers of the corporation that it was paid out of capital or he might report as income for one year an item of income which properly belonged in another year.  Accordingly, your committee has provided for a 5-year statute in such cases.  This amendment also necessitates a change in section 276(a) of the bill.

Section 276(a).  False return or no return

This section is explained in connection with the change in section 275.

Although the Finance Committee's rationale was different from that of the Ways and Means Committee, the Finance Committee's statutory language describing the omission that would trigger a 5-year limitation period (sec. 275(c)) was the same as

the language that the Ways and Means Committee used to trigger a broadening of the fraud exception (sec. 276(a) of the House bill).

In conference, the House receded and the Senate amendments were agreed to. See H. Rept. (Conference Report) 73-1385, at 25 (1934), 1939-1 C.B. (Part 2) 627, 634. None of the referenced committee reports explains the intended meaning of the phrase "the amount of gross income stated in the return". Also, we have not found in the hearings or the floor debates any discussion of the meaning of that phrase. See Estate of Klein v. Commissioner, 63 T.C. 585, 594 (1975), affd. 537 F.2d 701 (2d Cir. 1976).

The language of section 275(c) continued unchanged in the later revenue acts and through the Internal Revenue Code of 1939.

Section 275(c), I.R.C. 1939, became section 6501(e)(1)(A), I.R.C. 1954, with three modifications, as follows:

> (1) the 5-year limitations period of former law was changed to 6 years;

> (2) "gross income" from a trade or business was redefined for these purposes to not include the subtraction for cost of sales or services; and

> (3) for purposes of the numerator of the fraction, adequate disclosure of an item will preclude that item being treated as omitted.

The Ways and Means Committee report for H.R. 8300, which became the Internal Revenue Code of 1954 (H. Rept. 83-1337, p. 107 (1954)), describes these changes as follows:

(2) The period of limitation for assessment is made 6 years instead of 5 in the case of the omission of 25 percent of gross income, and a similar rule is applied in the bill to the estate and gift taxes.  However, under the bill this longer period is not to apply if disclosure of the nature and amount of omitted items is made on or with the tax return.

The report goes on to state as follows (id. at A414):

Several changes from existing law have been made in subsection (e) of this section.  In paragraph (1), which relates to income tax, the existing 5-year rule in the case of an omission of 25 percent of gross income has been extended to 6 years.  The term gross income as used in this paragraph has been redefined to mean the total receipts from the sale of goods or services prior to diminution by the cost of such sales or services.  A further change from existing law is the provision which states that any amount as to which adequate information is given on the return will not be taken into account in determining whether there has been an omission of 25 percent.

The Finance Committee report is almost identical to the Ways and Means Committee report.  See S. Rept. 83-1622, pp. 143-144, 584 (1954).

In addition, in section 702(c) (no corresponding provision in prior law) the Congress provided as follows:

SEC. 702.  INCOME AND CREDITS OF PARTNER.

*       *       *       *       *       *       *

(c) Gross Income of a Partner.--In any case where it is necessary to determine the gross income of a partner for purposes of this title [i.e., title 26, the Internal Revenue Code], such amount shall include his distributive share of the gross income of the partnership.

This provision is explained as follows in the Ways and Means Committee report, H. Rept. 83-1337, supra at 65-66:

A. General rules (secs. 701-707)

    (1) Income of partners.--Under your committee's bill, as under present law, partners will be liable individually for income tax on their distributive shares of partnership income. The bill provides that the partnership will act as a mere conduit as to income and loss items, transferring such items directly to the individual partners.

    The items required to be segregated will retain their original character in the hands of the partner as though they were realized directly by him from the same source from which realized by the partnership and in the same manner. After excluding the items required to be separately treated, the remaining income or loss, which corresponds to the ordinary income or loss of the partnership under present law, is attributed to the partners.

    The computation of partnership income is generally on the same basis as existing law. The partnership is allowed the usual business deductions, but is denied the deductions peculiar to individuals.

    The bill provides that all elections with respect to income derived from a partnership (other than the election to claim a credit for foreign taxes) are to be made at the partnership level and not by the individual partners. This rule recognizes the partnership as an entity for purposes of income reporting. It avoids the confusion which would occur if each partner were to determine partnership income separately for his own purposes.

    (2) Distributive shares.--The taxation of partnership income or other items directly to the partners requires a determination of each partner's share of such items. In general, such shares will be determined in accordance with the partnership agreement as under existing practice.

The report goes on to state as follows, id. at A221, A222:

Section 702. Income and credits of partner

    This provision represents no change in current law and practice. It incorporates provisions of sections 182, 183(c), 184, 186, and 189 of present law.

        \*    \*    \*    \*    \*    \*    \*

Subsection (c) makes clear that, whenever the gross income of a partner is to be determined, such amount shall include his distributive share of the partnership gross income.  For example, a partner is required to include his distributive share of partnership gross income in determining his individual gross income for the purposes of determining the necessity of filing a return, the application of the provision permitting the spreading of income for services rendered over a 3-year period, the amount of gross income received from possessions of the United States, <u>and whether the extended period of limitation provided in the case of 25-percent omission from gross income is applicable</u>. [Emphasis added.]

The Finance Committee report, S. Rept. 83-1622, <u>supra</u> at 378, is almost identical, and does not even note that the Finance Committee proposed to amend section 702(c) by applying it to determinations "for purposes of this title" (i.e., the entire Internal Revenue Code), while the House would have applied section 702(c) to determinations "for purposes of this chapter" (i.e., chapter 1, relating to income taxes).  The statute of limitations is in chapter 66, not chapter 1.  The Senate version was enacted.  See H. Rept. (Conf. Rept.) 83-2543, at 14 (1954), relating to Senate Amendment 177.

In 1956, the Treasury Department promulgated regulations (T.D. 6175, 1956-1 C.B. 211, 214-216) dealing with the extended limitations period, as follows:

Sec. 1.702-1. Income and credits of partner.--

\*     \*     \*     \*     \*     \*     \*

(c) Gross income of a partner.--

\*     \*     \*     \*     \*     \*     \*

(2) In determining the applicability of the 6-year period of limitation on assessment and collection provided in section 6501(e) (relating to omissions of more than 25 percent of gross income), a partner's gross income includes his distributive share of partnership gross income (as described in section 6501(e)(1)(A)(i)). In this respect, the amount of partnership gross income from which was derived the partner's distributive share of any item of partnership income, gain, loss, deduction, or credit (as included or disclosed in the partner's return) is considered as an amount of gross income stated in the partner's return for the purposes of section 6501(e). For example, A, who is entitled to one-fourth of the profits of the ABCD partnership, which has $10,000 gross income and $2,000 taxable income, reports only $300 as his distributive share of partnership profits. A should have shown $500 as his distributive share of profits, which amount was derived from $2,500 of partnership gross income. However, since A included only $300 on his return without explaining in the return the difference of $200, he is regarded as having stated in his return only $1,500 ($300/$500 of $2,500) as gross income from the partnership.

In providing for an extended limitations period, the Congress did not indicate why gross income, rather than adjusted gross income or any other concept, was chosen as the touchstone for the extended statute of limitations,[9] nor did the Congress provide a clue as to what is meant by "the return" for purposes of determining the amount of the denominator in the 25-percent calculation. Compare Colony, Inc. v. Commissioner, 357 U.S. 28 (1958), in which the Supreme Court relied on legislative history to decide what is meant by "omits from gross income" for purposes

---

[9]Note that a taxpayer's omission of gross income does not necessarily result in an adjustment to the taxpayer's taxable income. See Colony, Inc. v. Commissioner, 357 U.S. 28, 36 (1958); Colestock v. Commissioner, 102 T.C. 380 (1994).

of determining the amount of the numerator in the 25-percent calculation. Neither side cites Colony, Inc., and neither side points to any aspect of the legislative history that may shed light on the meaning that the Congress intended to give to the statutory term "the return."

IV. Evolution of the Caselaw

In Masterson v. Commissioner, 1 T.C. 315 (1942), revd. on another issue 141 F.2d 391 (5th Cir. 1944), the taxpayer had filed two 1935 income tax returns on the same day, one for herself and the other signed by her "individually, and as independent executrix of the Estate of" her late husband. See id. at 322-323. Each of these tax returns referred to the other. See id. at 323. The Commissioner determined that the taxpayer should have reported on her individual tax return the corrected net income of the estate. See id. at 323. The notice of deficiency was issued more than 3 years, but less than 5 years, after the due date of the taxpayer's tax return. We held that the two tax returns would not be treated together as "the return" within the meaning of section 275(c) of the Revenue Act of 1934. See id. at 324. We said that the statute would not be construed to permit such combining because (1) the tax returns were of different taxpayers and (2) the estate's income tax return was of a different type of taxpayer and it might be that the "facts necessary to a correct determination of the tax due would not

appear from two returns of the type before us here". See id.
The Circuit Court of Appeals reversed because the panel's
majority concluded that the Commissioner's adjustment was
incorrect; the Circuit Court of Appeals did not indicate any
disagreement with our statute of limitations analysis.

In Ratto v. Commissioner, 20 T.C. 785 (1953), the taxpayer
and her husband were California residents, operated a liquor
business owned by them in community, and filed separate 1946 tax
returns. See id. at 786. The taxpayer's husband reported the
liquor business operations on his Schedule C, on which he showed
"gross profit" of $30,462.96 and "net profit" of $10,029.19. He
then "computed his income tax on one-half of this amount [the net
profit] with the explanation '½ Community Income Reported By
Wife,' and which he listed as a deduction." Id. The taxpayer
reported on her Schedule E $5,014.60 as "½ community income."
See id. at 786. Apparently, she did not show on her tax return
any other information about the liquor business. The
Commissioner determined that the taxpayer omitted $10,216.88
gross profits from the liquor business,[10] together with about
$3,600 of other small items. See id. at 787. The notice of
deficiency was sent more than 3 years, but less than 5 years,
after the taxpayer filed her 1946 tax return. We held that the

_____

[10]One-half of $30,462.96, less the $5,014.60 that was
reported.

taxpayer's husband's tax return was separate from the taxpayer's tax return. We concluded as follows (id. at 789-790):

> This Court and the circuit courts of appeals have specifically held that for the purposes of applying section 275(c) of the Internal Revenue Code, consideration may only be given to the return of the particular taxpayer and that the return of another taxpayer may not be considered.

>     *      *      *      *      *      *      *

> Petitioner's complaint that "it does not seem equitable to deny a taxpayer the benefit of the statute of limitations merely because of a failure to duplicate the purely mechanical computation of gross sales less cost of sales to show the gross income amount which has already been fairly reported" is also without merit. Section 275(c) is not limited to situations involving bad faith. * * *

> The gross income stated in petitioner's income tax return is therefore limited to the $5,014.60 shown therein and does not include any amounts stated in her husband's return.

In Switzer v. Commissioner, 20 T.C. 759 (1953), the taxpayer-husbands (H's) were partners whose partnership interests constituted community property under California law. Each H and each of the taxpayer-wives (W's) filed separate timely tax returns for 1944 and 1945. The partnership filed timely information returns for these years. The notices of deficiency were sent to the H's and W's more than 3 years, but not more than 5 years, after the respective tax returns were filed. See id. at 761. The taxpayers argued that the partnership's information returns should be treated as being part of the taxpayers' individual tax returns, to the extent of their partnership interests, in the same manner as a Schedule C is treated as being

part of an individual Form 1040 for a sole proprietor.  See id.
at 767.  We rejected their arguments, relied on Masterson v.
Commissioner, supra, and held that the denominator of the section
275(c) fraction is to be determined by what is stated on the
taxpayer's tax returns without regard to the partnership's
information returns.  See Switzer v. Commissioner, 20 T.C. at
768.  However, our determination was remanded by the Court of
Appeals for the Ninth Circuit on September 17, 1954, with
directions (in accordance with the stipulation of the parties in
Switzer) to vacate our decisions and enter decisions for the
taxpayers.  See Rose v. Commissioner, 24 T.C. 755, 768 (1955);
Rev. Rul. 55-415, 1955-1 C.B. 412, 413.[11]

---

[11]Rev. Rul. 55-415, 1955-1 C.B. 412, although issued after
the enactment of the Internal Revenue Code of 1954, is the
Commissioner's interpretation of section 275(c) of the Internal
Revenue Code of 1939.  The ruling states, in pertinent part, as
follows (1955-1 C.B. at 413):

> It is well recognized that gross income, as earned, belongs
> to some taxable entity, and that a partnership is not a
> taxable entity.  It logically follows that the partners
> should be considered as the owners of partnership gross
> income.

> \*     \*     \*     \*     \*     \*     \*

> \* \* \* it is held that for the purpose of section 275(c)
> of the Code "gross income" of a member of a partnership
> includes his proportionate share of the gross income of the
> partnership.  See Harry Landau et al. v. Commissioner, 21
> T.C. 414 [1953].  Any partner's share of the gross income
> reported in the partnership information return should be
> considered as having been returned by the taxpayer as such
> information return is a return by or on behalf of each
>                                              (continued...)

In <u>Rose v. Commissioner</u>, <u>supra</u>, the taxpayer-husband (H) owned and operated a retail store as a sole proprietorship in Ventura, California, and another retail store as a partnership with his brother in Santa Barbara, California. See <u>id.</u> at 757. H's interests in the Ventura store and the Santa Barbara partnership constituted community property. See <u>id.</u> at 758-759, 768. H and W filed separate tax returns for 1943. See <u>id.</u> at 757. The Santa Barbara partnership filed a partnership information return for 1943. See <u>id.</u> at 758, 768. The Ventura store filed a partnership information return for 1943, at the suggestion of a revenue agent, in order to facilitate the reporting of H's and W's community income derived from that store. See <u>id.</u> at 758-759, 769. If H and W were treated as having stated in their tax returns their shares of the gross income of the Ventura store, then the denominators of their section 275(c) fractions were more than four times the gross income that the Commissioner determined H and W omitted, the regular 3-year statute of limitations applied, and the notices of deficiency for 1943 were untimely. See <u>Rose v. Commissioner</u>, 24 T.C. at 760, 766-770. We analyzed the situation as follows (<u>id.</u> at 768-769):

---

[11](...continued)
partner.

The Ventura store was not operated by a partnership. It was community property of the petitioners and the income therefrom was community income. Each of the petitioners, therefore, should have reported one-half of the gross income from the business. Leslie A. Sutor, 17 T.C. 64, 67. The respondent urges that they did not do so in their individual returns, and that their failure to do so is an omission from gross income by each of them. But we think it is unrealistic to say that the petitioners did not report the gross income of the Ventura store (with the exception of the $17,946.97 which each of them omitted). They did so on Form 1065, a "partnership return." Although there was no partnership between them in the business of this store, Form 1065 returns were filed for the years 1938 to 1948, inclusive, at the suggestion of a revenue agent to facilitate the reporting of the community income of the store. The so-called partnership return filed for 1943 reported the gross income of the Ventura store in which petitioners each had an equal interest. It was not the return of another taxable entity. Cf. Corrigan v. Commissioner, 155 F.2d 164, 166 (C.A. 6); Elvina Ratto, 20 T.C. 785, 789. It showed income of the community, a nontaxable entity. In the circumstances we think that the so-called partnership return filed for the Ventura store was merely an adjunct to the individual returns of Jack and Mae Rose and must be considered together with such individual returns and treated as part of them. This case is thus distinguished from the Switzer case where the return in question was a proper partnership return, whereas here it was nothing unless it was an adjunct to the individual returns. But if the Commissioner is now and henceforth to concede, contrary to our decision in the Switzer case, that a valid partnership return may be read with the return of an individual partner to arrive at the total gross income stated in the partner's return, then, a fortiori, the Form 1065 return in this case which was filed merely to facilitate the reporting of community income of the petitioners, similar returns having been accepted for a number of years for that purpose by the Commissioner, would have to be read together with the individual returns of the partners to ascertain how much gross income was reported by each of them. Cf. Germantown Trust Co. v. Commissioner, 309 U.S. 304; Atlas Oil & Refining Corporation, 22 T.C. 552, 557. We hold, therefore, that one-half of the gross income appearing on the Ventura store "partnership" return must be imputed to the individual return filed by each petitioner in determining the total gross income stated therein for the purposes of section 275(c). [Emphasis added.]

In <u>Roschuni v. Commissioner</u>, 44 T.C. 80 (1965), the taxpayer-wife owned an S corporation, which filed an information return for 1958, a year for which the Commissioner determined a deficiency against the taxpayers. The notice of deficiency was issued more than 3 years, but less than 6 years, after petitioners filed their 1958 tax return. We quoted extensively from our opinion in <u>Rose v. Commissioner</u>, <u>supra</u>, concluded that the S corporation was not a taxable entity, and stated that the principle of <u>Rose v. Commissioner</u> applied. See <u>Roschuni v. Commissioner</u>, 44 T.C. at 85-86. We described this principle as requiring the information return of the nontaxable entity to be treated as an adjunct of the taxpayers' tax return. See <u>id.</u> at 85-86. We also held that the taxpayers' reference, in their 1958 tax return, to the S corporation's 1958 information return and the disputed transaction, was sufficient to satisfy the requirements of section 6501(e)(1)(A)(ii), and so any omitted gross income from that transaction was not to be taken into account. See <u>id.</u> at 85-86.

In <u>Davenport v. Commissioner</u>, 48 T.C. 921 (1967), the taxpayers' 1958, 1959, and 1960 tax returns reported losses from a specified partnership. See <u>id.</u> at 924-925. The taxpayer-wife contended that assessment of any deficiencies for these 3 years was barred by the statute of limitations; the Commissioner contended that the 6-year limitations period applied. See <u>id.</u> at

927-928. We held that the Commissioner failed to carry the burden of proving an omission of more than 25 percent of the gross incomes stated in the taxpayers' tax returns, as follows (id. at 928, 929):

    To satisfy his burden in proving the omission, respondent must show the amount of gross income stated in the return and the amount of income properly includable therein which has been omitted. Elizabeth Bardwell, 38 T.C. 84 (1962), affd. 318 F. 2d 786 (C.A. 10, 1963), and Lois Seltzer, 21 T.C. 398 (1953). In the instant case respondent has not shown the amount of gross income stated in the return. On each of the returns for the years 1958 through 1960 there is reported on Schedule H a net loss figure for certain partnership income. Respondent has not shown whether a partnership return was filed for those years and if so the gross income reported thereon. Under section 6501(e)(1)(A) the term "gross income from a trade or business" means the amount received or accrued from the sales of goods or services undiminished by the cost of such goods or services. Since there is no evidence indicating the manner in which petitioner arrived at the loss figure for income from the partnership, there is nothing in the record to show petitioner's gross income from the partnership. Respondent's Rev. Rul. 55-415, 1955-1 C.B. 412, following his ruling in I.T. 3981, 1949-2 C.B. 78, as to a partner's gross income for the purpose of section 251 of the Internal Revenue Code of 1939, provides, and this Court has recognized, that a partnership return is to be considered together with an individual return in determining the total gross income stated in the individual return for the purpose of determining whether the 6-year statute of limitations is applicable. Jack Rose, 24 T.C. 755, 768-769 (1955). See also Elliott J. Roschuni, 44 T.C. 80 (1965), and Genevieve B. Walker, 46 T.C 630, 637-738 (1966). [Emphasis added.]

    We therefore conclude that respondent has failed to establish that petitioner and Richard omitted from any one of their joint Federal income tax returns for the years 1958, 1959, and 1960 an amount of gross income properly includable therein in excess of 25 percent of the amount of gross income stated in such return and therefore respondent has failed to show that the 6-year statute is applicable.

\*      \*      \*      \*      \*      \*      \*

We, therefore, sustain respondent's determination as modified by the stipulation of the parties filed in this case for the years 1961, 1962, and 1963 but hold that the assessment or collection of any deficiency against petitioner is barred by the statute of limitations for the years 1958, 1959, and 1960.

In Estate of Klein v. Commissioner, 63 T.C. 585 (1975), affd. 537 F.2d 701 (2d Cir. 1976), we were called upon to determine the meaning of "the amount of gross income stated in the return", within the meaning of section 6013(e)(1)(A), relating to relief from joint liability, as that provision applied to 1955.  See 63 T.C. at 589.  Relying in part on section 6013(e)(2)(B), we held that the quoted phrase in section 6013(e)(1)(A) must be given the same meaning that it has in section 6501(e)(1)(A), and that under the latter provision--

> the only way "the amount of gross income stated in the return" can be determined, where a partner of a partnership which has filed a return is concerned, is to consider the partnership return together with the individual return in determining "the total gross income stated in the return" of the individual partner. Genevieve B. Walker, 46 T.C. 630 (1966).  See Nadine I. Davenport, 48 T.C. 921, 928 (1967); accord, Elliott J. Roschuni, 44 T.C. 80 (1965), and Jack Rose, 24 T.C. 755 (1955).  Cf. sec. 702(c); sec. 1.702-1(c)(2), Income Tax Regs.  [Estate of Klein v. Commissioner, 63 T.C. at 590-591.]

As a result, we held, for the Commissioner, that--

> the partnership return, must be read as an adjunct with the individual partner's return in determining the total gross income stated in the individual's return. Indeed, that determination with respect to partnerships arose from the gloss upon the section by the decided cases, compare L. Glenn Switzer, 20 T.C. 759 (1953), with Genevieve B. Walker,

supra, and Nadine I. Davenport, supra; cf. Elliott J. Roschuni, supra; Jack Rose, supra.[9]  [Emphasis added.]

_____

[9]  See also Harry Landau, 21 T.C. 414 (1953); Norman Rodman, T.C. Memo. 1973-277; and Vernie S. Belcher, T.C. Memo. 1958-180, where it is pointed out that a "partner's share of the gross income on the partnership returns must be imputed to the individual return." And that if the partnership return is not in evidence it is impossible to know the "gross income stated in the return." The 6-year limitation does not apply if disclosure "is made on or with the tax return." (Emphasis supplied.) H. Rept. No. 1337, 83d Cong., 2d Sess., p. 107 (1954); S. Rept. No. 1622, 83d Cong., 2d Sess., pp. 143-144 (1954).

[Id. at 592.]

Taking into account the taxpayers' share of the gross income shown on their partnership's information return as having been shown on the taxpayers' tax return, we held that the gross income omitted from the taxpayers' tax return was less than 25 percent of the gross income stated on the taxpayers' tax return. See Estate of Klein v. Commissioner, 63 T.C. at 588. We concluded from this that the taxpayer-wife failed to qualify for relief from joint liability under the law then in effect. See id. at 589. Although we ruled for the Commissioner based on the language of sections 6013 and 6501, we commented as follows on the Commissioner's argument under section 702(c) (Estate of Klein v. Commissioner, 63 T.C. at 591 & n.6):

As we read the first sentence [of the Finance Committee report on the 1970 enactment of sec. 6013(e)] we think "the income reported" by a partner includes his share of the gross income, as defined in section 6501(e)(1)(A)(i), of the partnership. Rev. Rul. 55-415, 1955-1 C.B. 412; I.T. 3981, 1949-2 C.B. 78.[6]

_____

[6]  Respondent cites sec. 702(c) and sec. 1.702-1(c)(2), Income Tax Regs., in support of this position. We note in passing our belief that

the example given in sec. 1.702(c)(2), Income Tax Regs., conflicts with sec. 6501(e)(1)(A)(i) and (ii) because under the latter section "gross income" is specially defined and if a partnership return is filed the entire amount of such "gross income" allocable to a partner is deemed reported on the return.  We do not think the gross income referred to in sec. 702(c) is the equivalent of the "gross income" defined under sec. 6501(e)(1)(A).

In affirming our determination and agreeing with our analysis, the Court of Appeals took the occasion to state agreement with our comment on section 702(c), as follows (537 F.2d at 705 n.9):

We further note that we share the tax court's opinion that the example in Treas. Reg. § 1.702-1(c) appears to conflict with § 6501(e)(1)(A)(ii)'s method for determining the amount "omitted" from gross income when a partnership return has been filed.

We conclude that one pattern that emerges from our prior opinions dealing with the denominator in the 25-percent calculation, is relevant to the limited matter now before us.  In dealing with documents that were not physically attached to the taxpayer's tax return, we have consistently[12] drawn a line between (1) documents that have been filed as tax returns of

---

[12]In Switzer v. Commissioner, 20 T.C. 759, 767-768 (1953), we pointed to computational anomalies that might result from applying this approach to partnerships, and there declined to so apply this approach.  However, on appeal the Commissioner joined the taxpayers to persuade the Court of Appeals to order us to vacate our decisions and enter decisions for the taxpayers. After we complied with the Court of Appeals' order in the Switzer dockets, we recognized that the Commissioner had, in effect, conceded error in Switzer's statute of limitations rulings and meant to apply that concession generally.  See Rose v. Commissioner, 24 T.C. 755, 768-769 (1955).  In Rose, we merely distinguished Switzer but did not formally overrule it.  See 24 T.C. at 769.  However, since that time, we have not followed Switzer on this point.  In the instant cases, neither side cites Switzer.  Clearly, Switzer has been sapped of its vitality.

other taxpayers, and (2) documents that, even if filed as tax returns, were not tax returns of other taxpayers.  Documents in the former category have not been taken into account in determining the amount of gross income "stated in the return", see, e.g., Masterson v. Commissioner, supra; Ratto v. Commissioner, supra.

On the other hand, the second category--documents that were not filed as tax returns of other taxpayers--have been treated as adjuncts to and part of the taxpayers' tax returns for purposes of determining "the amount of gross income stated in the return". This approach has been applied to partnership tax returns (see, e.g., Davenport v. Commissioner, supra), S corporation tax returns (see, e.g., Roschuni v. Commissioner, supra), and other documents which are not tax returns of taxpayers, see, e.g., Rose v. Commissioner, supra.

V.  Analysis

Section 6501(e) and its predecessors require omitted gross income to be compared to gross income stated in the return.  In Green v. Commissioner, 7 T.C. 263, 277 (1946), affd. 168 F.2d 994 (6th Cir. 1948), we concluded that "'Gross income' has a well established meaning in the revenue laws, denoting statutory gross income as defined by section 22 [of the Revenue Act of 1938, predecessor of present sec. 61]."  In enacting the Internal Revenue Code of 1954, the Congress added clause (i) to section

6501(e)(1)(A) to modify the definition of gross income in the case of trades or businesses.  Except for that modification, "the general definition of gross income found in the Code applies." Northern Ind. Pub. Serv. Co. & Subs. v. Commissioner, 101 T.C. 294, 299 n.7 (1993).

However, taxpayers' tax returns ordinarily do not provide any place for stating gross income.[13]  See, e.g., Estate of Klein v. Commissioner, 537 F.2d at 704; Davis v. Hightower, 230 F.2d 549, 552, 553 (5th Cir. 1956).  We have held that "total income", as used in the Form 1040 is not the equivalent of "gross income" for purposes of the extended statute of limitations.  See Green v. Commissioner, 7 T.C. at 276-277.  As a result, we have dealt with the taxpayers' tax returns by determining whether one or another item was properly an item of gross income within the appropriate contemporary statutory definition of gross income.

As noted, supra, when the taxpayers' tax returns stated taxable income from partnerships or S corporations, we declared that the information returns of these pass-through entities would be treated as adjuncts to, and part of, the taxpayers' tax returns.  See, e.g., Davenport v. Commissioner, supra

---

[13]See supra our findings with regard to the Harlans' 1985 tax return.  Note that the parties have stipulated that the Harlans' gross income stated on their tax return ($1,410,077) is almost $200,000 more than the amount that the Harlans' tax return labeled as gross income ($1,216,099), even without taking account of flow of gross income from the 2d-tier partnerships.

(partnership), <u>Roschuni v. Commissioner</u>, <u>supra</u> (S corp.).

Indeed, the Court of Appeals for the Second Circuit described the

process thusly in <u>Estate of Klein v. Commissioner</u>, 537 F.2d at

704:

> Schedule H [more recently, Schedule E] of Form 1040,
> labelled "Income from Partnerships, Estates, Trusts, and
> Other Sources," provides only one line for reporting
> partnership income together with the name and address of the
> partnership from which that income was derived.  Schedule H
> speaks in terms of "[t]otal income (or loss)," the reference
> to losses obviously suggesting only a net (adjusted gross)
> rather than a gross income figure.  Given that limitation
> upon the scope of the Form 1040, it is clear that the return
> neither intends nor purports to show a taxpayer's gross
> income when that taxpayer has partnership income.  Indeed,
> <u>gross</u> income is not "stated in the return" in the case of
> such a taxpayer unless one looks at the partnership return
> as being a part of the personal income tax return. * * *

When we take the partnership's information return into

consideration as part of the partner's tax return, we find the

same limitations in the former document that the Court of Appeals

described in <u>Estate of Klein v. Commissioner</u>, <u>supra</u>, as to the

latter document.  That is, the 1985 partnership information

returns for Pacific and Carlyle (Ridge's 1st-tier partnerships)

and for Mission Resources (Theodore's 1st-tier partnership) do

not provide for a showing of "gross income".  There is a line for

"total income (loss) (combine lines 3 through 10)", (Form 1065,

1st p., l.11), but it is evident that several of the components

of total income are themselves net amounts.  In those instances,

recourse must be had to other forms, schedules, statements, and

other documents attached to the 1st-tier partnership's

information return in order to determine the amount of gross income stated on the partnership's information return, which in turn is necessary in order to determine the amount of the taxpayer partner's gross income stated in the taxpayer's tax return. There does not appear to be any dispute that these other forms, schedules, statements, and other documents of the 1st-tier partnership's information return are treated collectively as adjuncts to, and part of, the taxpayer partner's tax return for purposes of determining the amount of gross income stated on the taxpayer partner's tax return, even though they are not attached to the taxpayer partner's tax return.

If the 1st-tier partnership's information return discloses net income or loss from a 2d-tier partnership, then the same analysis requires us to consider the 2d-tier partnership's information return as merely another document that is an adjunct to, and part of, the taxpayer partner's tax return. That is, to paraphrase the Court of Appeals for the Second Circuit (see Estate of Klein v. Commissioner, 537 F.2d at 704), gross income is not "stated in the return" of a taxpayer partner who reports net partnership income from a 1st-tier partnership which in turn reports net partnership income from a 2d-tier partnership unless one looks at the 1st-tier partnership's information return together with all its adjuncts--among them being the 2d-tier

partnership's information return--as being part of the taxpayer partner's tax return.

Thus, we conclude that petitioners are correct in their contention that 2d-tier partnerships' information returns are to be taken into account in determining, for purposes of section 6501(e)(1)(A), the amount of gross income stated in the taxpayer's tax return.

## VI.  Other Considerations

Both sides rely on section 702(c) and section 1.702-1(c)(2), Income Tax Regs.  Respondent asserts that "The plain language of the Code and the regulations requires" consideration of only the 1st-tier partnerships' information returns.  Petitioners assert that "Therefore, under this explicit statutory rule [sec. 702(c)], * * * respondent must necessarily" take account of the 2d-tier partnerships' gross income.  The short answer is that the texts of both section 702(c) and section 1.702-1(c)(2), Income Tax Regs., are silent on the matter of 2d-tier partnerships.  The little legislative history we have found regarding section 702(c) also is silent on this matter.  We have not found any indication that the Congress was aware of the question when it considered and crafted section 702(c), or that the Treasury Department was aware of the question when it issued the regulation.  Indeed, it may be argued that the statutory language ("determine the gross income of a partner") may apply to the numerator of the 25-

percent fraction of section 6501(e)(1)(A) ("omits from gross income an amount properly includible therein") but not to the denominator--"amount of gross income stated in the return" (emphasis added). See also the comments of this Court and the Court of Appeals of the Second Circuit in Estate of Klein v. Commissioner, 63 T.C. at 591 n.6, affd. 537 F.2d at 705 n.9, pointing out that "gross income" within the meaning of section 702(c) differs from "gross income" within the meaning of section 6501(e)(1)(A). Thus, notwithstanding both sides' reliance, we conclude that neither section 702(c) nor section 1.702-1(c)(2), Income Tax Regs., leads us to a resolution of the 2d-tier partnership matter, especially in the context of the denominator of the 25-percent fraction.

Respondent contends as follows:

> The partnership return (Form 1065) itself further supports looking only to the direct partnership return to determine gross income for section 6501(e) purposes. The total gross income of the partnership is the sum of the amounts on lines 1 through 7 with the exception of the I.R.C. § 6501(e)(1)(A)(i) exclusion for cost of goods sold. * * *

These contentions do not support respondent's position. The sum of the items on lines 1 through 7 frequently is not "The total gross income of the [1st-tier] partnership." Firstly, an element of gross income may appear on another line, after line 7. Secondly, several of the items on lines 1 through 7 are net amounts, and the underlying gross income may have to be

determined by inspection of other parts of the partnership
information return, Form 1065.  This may be illustrated in the
instant cases by comparing lines 1 through 11 of the stipulated
1985 Pacific partnership information return with the parties'
stipulation as to Pacific's gross income.

Table 1

| Pacific's Partnership Information Return (Form 1065, 1st. page)[1] | | Pacific's Stipulated Gross Income[2] | |
|---|---|---|---|
| 4. Ordinary income (loss) from other partnerships and fiduciaries See STMT#2 | -7,705 | Rental income (gross) | $13,708 |
| | | Rental income (gross) | 11,730 |
| | | Rental income (gross) | 17,048 |
| | | Rental income (gross) | 9,024 |
| 6a. Gross rents $63,723 | -275,383 | Rental income (gross) | 12,213 |
| 6b. Minus rental expenses $ STMT ATTACHED | | Total rental income | 63,723 |
| | | Form 4797, line 19 | 703,950 |
| 6c. Rental income (loss) | | Form 4797, line 1d | 246,000 |
| | | Total | 1,013,673 |
| 9. Net gain (loss)(Form 4797, line 17) | 34,935 | | |
| 11. TOTAL income (loss) (combine lines 3 through 10) | -248,153 | | |

[1] Lines 1,2,3,5,7,8, and 10 do not have any entries.
[2] The stipulation specifically excludes any gross income from Pacific's 2d-tier partnership.

As is apparent, more than 90 percent of Pacific's stipulated
gross income shown on its partnership information return is
related to line 9, and not lines 1 through 7.  Further, line 9
does not tell the whole story--it shows only $34,935 net income
from Form 4797, but the parties' stipulation shows a total of
$949,950 gross income from Form 4797.  Thus, contrary to the
implications of respondent's contentions, respondent's actions in
the stipulations show that it is necessary to examine more than

lines 1 through 7 of Pacific's Form 1065 in order to determine Pacific's gross income. When we do that, we find that on line 4 of Pacific's Form 1065 we are told to "See STMT #2".

That statement is as follows:

STATEMENT # 2 -              INC OTH PARTNERSHIPS

    TEROS-PER K-1                              -6,633
    94-2735621
    INTEREST-33%
    SECTION 743 (B) ADJ                        -1,072

TOTAL STATEMENT # 2 - TO FORM 1065, LINE 4          -7,705

The record does not include information about the gross income stated in the information return of Pacific's 2d-tier partnership.

We conclude that (1) respondent's contentions are contrary to the parties' stipulations and (2) the parties' stipulations are consistent with the Court's analysis. That is, (a) the 1st-tier partnership's information return is treated as an adjunct to, and a part of, the taxpayer's tax return, (b) the 2d-tier partnership's information return is treated as an adjunct to, and a part of, the 1st-tier partnership's tax return, and (c) in determining the amount of gross income stated in the taxpayer's tax return, neither the Court nor the parties are limited to what is stated on the first page of the tax return.

Respondent's brief closes as follows:

> Finally, respondent's interpretation of Section 6501(e) yields a sensible, administrable result. Looking through to the lower tiers might require an audit of each of those

partnerships.  This would impose an excessive administrative burden both on the Service and on taxpayers.

Petitioners respond as follows:

> Respondent claims that following statutory mandate of Code section 702(c) would cause an "excessive administrative burden" on the IRS and taxpayers.  Incredibly, respondent states that adopting a "look-through" rule to lower-tier partnerships "might require an audit of each of those partnerships."  In this case, respondent was able to make computations of gross income of the Upper-Tier Partnerships without an audit.  There is no reason to suggest an audit of the Lower-Tier Partnerships would be required.

The record in the instant cases thus far does not disclose either the magnitude of the problem respondent warns against or the extent of respondent's activities with regard to the gross income stated in the 1st-tier partnerships' information returns. We note that the parties' stipulations deal with the components of the gross incomes stated on the partnership information returns of 16 entities, and there are only three 2d-tier partnerships involved in the instant cases.  Thus, whatever the level of effort that respondent expended, it does not appear that including the 2d-tier partnerships would cause that level to be substantially increased in the instant cases.

In addition, the Supreme Court's opinion in Colony, Inc. v. Commissioner, 357 U.S. at 36-37, suggests that respondent is not obligated to audit or otherwise examine beyond what is disclosed on the tax return, for purposes of applying the amount of the denominator in the 25-percent fraction.  Clearly, it is now accepted that respondent must deal with the 1st-tier

partnerships' information returns.  This was established before 1958, when the Supreme Court ruled in <u>Colony, Inc</u>.   We have no reason to believe that the standards for respondent's work on the 1st-tier partnerships' information returns were intended to be any different from those applicable to the taxpayers' tax returns.  Given that these obligations exist as to the 1st-tier partnerships' information returns, we do not see any principled basis for concluding that the 2d-tier partnerships' information returns require so heightened a level of examination or audit, that our analysis of the law ought to be affected by that heightened level.  Respondent's brief, almost afterthought, speculation is far short of a cogent argument that principled distinction can be drawn between 1st-tier partnerships' information returns and all 2d-tier partnerships' information returns.

We do not change our analysis on account of respondent's warning.

Our holding in this opinion will be incorporated into the decision to be entered in these cases when all the other issues are resolved.[14]

_____

[14]The parties' stipulations and stipulated exhibits are not treated as exhausting the record as to the subject matter of the instant opinion.  In further proceedings, the parties will be free to provide such additional evidence on this subject matter as is not inconsistent with our holdings and is otherwise admissible.  See also <u>Reis v. Commissioner</u>, 142 F.2d 900, 902, 903 (6th Cir. 1944), affg. 1 T.C. 9 (1942), as modified by a Memorandum Opinion of this Court dated June 4, 1943.